No. 98-547

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 305

297 Mont. 188

992 P.2d 229

---

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DONALD ROGERS,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Kathererine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Office of Appellate Defender, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jennifer M. Anders,

Assistant Attorney General; Helena, Montana

Tom Esch, Flathead County Attorney; Kalispell, Montana

---

Submitted on Briefs: July 1, 1999

Decided: December 7, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

1. ¶ Donald Rogers (Rogers) appeals from the judgment and sentence entered by the Eleventh Judicial District Court, Flathead County, on a jury verdict finding him guilty of sexual intercourse without consent. We affirm in part and reverse in part.
2. ¶ We restate the issues on appeal as follows:
3. ¶ 1. Did the District Court abuse its discretion in admitting testimony by the emergency room physician?
4. ¶ 2. Did the District Court abuse its discretion in admitting testimony about previous sexual assaults by Rogers?

*BACKGROUND*

5. ¶ On May 29, 1997, Rogers met Kristian Gale (Gale) at the Blue Moon Saloon, near Columbia Falls, Montana, where each had gone to enjoy the live music. They talked, had drinks and danced. Gale declined Rogers' advances throughout the evening, and they left the bar in separate vehicles sometime after midnight. After following Gale for a time, Rogers pulled his pickup in front of her Bronco and stopped. Rogers then approached Gale's vehicle.

6. ¶ According to Gale, her vehicle had stalled when Rogers cut her off and, when he reached her, he grabbed her arm and her keys and threatened to hurt her if she did not do what he asked. Rogers told Gale to get in his truck, but she refused, saying, "If you're gonna do this, do it in my truck." Gale then suggested she move her vehicle off the roadway and, with Rogers reaching in through the window and holding onto the steering wheel, she did so. Rogers directed her to disrobe and get in the back seat, and she did. According to Gale, while in the back of her vehicle, Rogers grabbed her hair, pushed her head into his crotch and forced her to perform oral sex on him. He subsequently pulled her head up and began kissing her and penetrating her vagina with his finger. As Rogers was about to engage in sexual intercourse with her, Gale asked him to use a condom. He replied he had no diseases and proceeded with intercourse.

7. ¶ Gale left the vehicle to relieve herself and, when she returned, Rogers was in the front seat of her vehicle. Gale joined Rogers in the front seat and each had a beer. Rogers talked about having been in prison for drug problems and not wanting to go back; Gale consoled him, suggesting he ask for help "from above." Rogers asked if Gale would like to have sex again. She declined, but asked for his phone number in case she changed her mind. Gale drove Rogers the short distance back to his pickup.

8. ¶ As Rogers got out of Gale's vehicle, he told her that, if she intended to call the police, she should run over him right then. Gale said she was not going to call the police and drove home. She called a friend in Seattle to discuss the incident and told her friend she was reluctant to report the incident because no one would believe her. Her friend convinced her otherwise and she called law enforcement. Flathead County Sheriff's Deputy Gordon Barthel met with Gale and she related what had occurred, describing the location of the incident, Rogers' vehicle and Rogers, including his name. Another deputy took Gale to the emergency room at Kalispell Regional Hospital, where Dr. James Dusing, the emergency room physician, examined her and found two "hickeys" on her neck and a tear in her labia.

9. ¶ The State of Montana (State) subsequently charged Rogers by information with

sexual intercourse without consent, a felony. His first trial ended in a mistrial.

10. ¶ At Rogers' second trial, the State's case focused on Gale's flight attendant training in dealing with hostage situations, where she was taught to submit to demands and negotiate to stay alive. Gale testified she felt threatened during the incident with Rogers, even though she did not see a weapon, so she applied her training to the situation. Dr. Dusing testified, over Rogers' objection, that Gale's emotional state in the emergency room was consistent with what he had observed in other patients who reported being raped. The District Court also admitted, over Rogers' objection, testimony from two women, Angela Tretteen (Tretteen) and Janice Lee Auwen (Auwen), regarding prior acts of sexual assault by Rogers against them. Rogers admitted having sexual intercourse with Gale, but claimed she was a willing participant. The jury found Rogers guilty of sexual intercourse without consent and the District Court subsequently sentenced him and entered judgment. Rogers appeals.

## STANDARD OF REVIEW

11. ¶ Trial courts have broad discretion in determining whether evidence is relevant and admissible, and we will not overturn a trial court's evidentiary ruling on appeal absent an abuse of that discretion. *State v. Smith*, 1998 MT 257, ¶ 6, 291 Mont. 236, ¶ 6, 967 P.2d 424, ¶ 6 (citation omitted).

## DISCUSSION

12. **¶ 1. Did the District Court abuse its discretion in admitting testimony by the emergency room physician?**

13. ¶ Dr. Dusing treated Gale in the emergency room on the morning she reported being raped. Prior to the introduction of Dr. Dusing's testimony at Rogers' second trial by videotaped deposition, Rogers objected to the following direct examination testimony:

Q. Okay. You described [Gale's] emotions as being at times angry, at other times teary eyed.

A. Uh-huh.

Q. Did any of that seem inappropriate to you?

A. No. In my experience of dealing with women who have reported to be raped, that's very consistent. It seemed very appropriate.

Rogers asked the court to excise the testimony from the videotape on the grounds it was opinion testimony for which he did not "think a foundation [had] been laid." Without specifying whether Dr. Dusing was offering an opinion at all or, if so, whether it was expert or lay opinion testimony, the District Court overruled the objection and admitted the entire videotaped testimony. The court observed that Dr. Dusing had been an emergency room physician for more than 12 years, during which time he would have been exposed to people who reported being raped, and concluded that that experience provided foundation for Dr. Dusing to report whether or not Gale's demeanor was consistent with what he had observed in his experience.

14. ¶ Rogers contends the District Court abused its discretion in admitting the testimony because the State failed to lay a proper foundation of special training or experience to qualify Dr. Dusing as an expert in Rape Trauma Syndrome (RTS) and because Dr. Dusing testified to the ultimate issue of whether Gale was raped and to her credibility. The State responds that Dr. Dusing did not testify regarding RTS and, therefore, it was unnecessary to lay a foundation qualifying him as an expert in RTS. In addition, the State contends Dr. Dusing's testimony did not encompass the ultimate issue or Gale's credibility because it was limited to his observations and experience within his own practice.

15. ¶ RTS is a post-traumatic stress disorder which persons subject to severe trauma such as rape may experience. *State v. Liddell* (1984), 211 Mont. 180, 187-88, 685 P.2d 918, 923. We previously have permitted a person qualified as an expert in RTS to testify regarding the presence of physical and psychological symptoms of RTS in a victim, as well as the cause of such symptoms, when consent to sexual intercourse is at issue. *Liddell*, 211 Mont. at 188, 685 P.2d at 923. Dr. Dusing's testimony in this case, however, was limited to his observations of Gale while he examined her and the extent to which her emotional state was consistent with that of other women reporting rape he had examined. He did not testify that Gale exhibited symptoms of RTS or that the cause of her symptoms probably was rape. We conclude that Dr. Dusing did not testify about RTS and, therefore, the State was not required to qualify him as an expert on that subject.

16. ¶ In support of his contention that Dr. Dusing testified to the ultimate issue and to Gale's credibility, Rogers asserts the District Court allowed Dr. Dusing "to tell the jury that Gale's behavior meant that she was telling the truth about being raped."

Rogers over characterizes Dr. Dusing's testimony.

17. ¶ When asked if Gale's emotions as he had previously described them--at times angry, at other times teary eyed--seemed inappropriate to him, Dr. Dusing merely stated that "[i]n [his] experience of dealing with women who have reported to be raped, that's very consistent. It seemed very appropriate." The testimony did not characterize Gale's emotions as having any particular meaning, much less state that Gale was telling the truth about being raped. It merely compared Gale's emotional state with that of other women in Dr. Dusing's experience who had reported being raped.

18. ¶ The general rule is well established that an expert may not comment on the credibility of an alleged victim. *See State v. Stringer* (1995), 271 Mont. 367, 377, 897 P.2d 1063, 1069 (citations omitted). Here, however, Dr. Dusing carefully limited his testimony to his observations of her as compared with other women in his professional experience who reported being raped; he did not state that her emotions were consistent with--and appropriate for--women who had been raped. Such limited statements and comparisons of objectively observable behavior do not constitute an opinion on credibility. Nor did Dr. Dusing offer an opinion on the ultimate issue of whether the sexual intercourse between Gale and Rogers was consensual or not.

19. ¶ We hold the District Court did not abuse its discretion in admitting Dr. Dusing's testimony.

20. **¶ 2. Did the District Court abuse its discretion in admitting testimony about previous sexual assaults by Rogers?**

21. ¶ Prior to trial, the State notified Rogers of its intent to introduce evidence of other crimes, wrongs or acts and Rogers filed a motion in limine to prohibit the State from doing so. The District Court denied Rogers' motion and admitted the State's other acts evidence via testimony by Tretteen and Auwen regarding past sexual assaults by Rogers.

22. ¶ Tretteen testified that Rogers sexually assaulted her in September of 1995. She worked for Rogers' parents and considered Rogers a friend. After tending bar one night, she interrupted a fight between Rogers and his mother and asked Rogers to go for a drive. Rogers drove down a country road, stopped and made advances toward Tretteen. When she asked him to stop, he pulled out a gun and told her they were going to have intercourse. When Tretteen responded she would rather die first, Rogers fired the gun out the window and then pointed it at her. Tretteen continued to argue and plead with him to take her home. Tretteen eventually escaped and hid until he quit looking for her. Rogers subsequently was charged with attempted

sexual intercourse without consent and felony assault, and convicted of felony assault.

23. ¶ Auwen testified that Rogers sexually assaulted her in May of 1997. She knew Rogers' mother and talked with Rogers in a bar one night. She subsequently left the bar and drove a short distance out of town, where one of her vehicle's tires went flat. Rogers and a friend stopped to help and, after they changed the tire, Rogers gave his friend Auwen's keys to return her car to town. Auwen went with Rogers, who drove her through town and into a wooded area where he pulled her clothes off, called her a "bitch," and told her if she did not behave herself she would end up dead. She testified that, although Rogers did not threaten her with a gun, she saw a gun on the floor of his truck as he pulled her hair to force her to engage in oral and sexual intercourse with him. After the assault, Rogers drove her back to her car. She reported the incident to the Missoula County Sheriff's Department, but did not pursue it.

24. ¶ Rogers contends that, because the only issue in his case was whether or not Gale consented to intercourse with him, Tretteen and Auwen's testimony was not admissible other acts evidence under Rule 404(b), M.R.Evid., or this Court's decisions. Therefore, according to Rogers, the District Court abused its discretion in admitting the evidence.

25. ¶ Rule 404(b), M.R.Evid., generally prohibits the use of other acts evidence to prove a person's character in order to show that he or she acted in conformity with that character at the time in question. The Rule also provides, however, that other acts evidence may be admissible for certain other purposes. We have established relatively strict criteria for the admissibility of such evidence, however:

(1) The other crimes, wrongs or acts must be similar.

(2) The other crimes, wrongs or acts must not be remote in time.

(3) The evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity with such character; but may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(4) Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

misleading of the jury, considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*State v. Matt* (1991), 249 Mont. 136, 142, 814 P.2d 52, 56. These criteria are commonly known as the Modified *Just* Rule. *State v. Whitlow* (1997), 285 Mont. 430, 438, 949 P.2d 239, 244. In the present case, Rogers does not dispute that the second criterion is met.

26. ¶ With regard to the first Modified *Just* Rule criterion, Rogers relies on *State v. Hansen* (1980), 187 Mont. 91, 608 P.2d 1083, in urging that the events to which Tretteen and Auwen testified were not sufficiently distinctive to be similar to the events at issue here. We agree.

27. ¶ There, the prosecution's evidence was that the defendant met the alleged victim in a bar, they left together, he drove into an isolated area and, when she resisted his advances, he twisted her thumb against her wrist and engaged in intercourse with her. *Hansen*, 187 Mont. at 93, 608 P.2d at 1084-85. The trial court admitted evidence of a similar earlier incident in which the defendant knew his victim, offered her a ride home but, rather than taking her home, drove to an isolated area where, when she resisted his advances, he twisted her thumb against her wrist and engaged in intercourse with her. *Hansen*, 187 Mont. at 94, 608 P.2d at 1085.

28. ¶ The defendant appealed the admission of evidence of the earlier sexual assault and we applied the four-part *Just* test, the first prong of which was identical to that later set forth in the Modified *Just* Rule. *Cf. State v. Just* (1979), 184 Mont. 262, 269, 602 P.2d 957, 961; *Matt*, 249 Mont. at 142, 814 P.2d at 56. In applying the "similarity" element, we observed that definite similarities existed between the prior sexual assault and the offense charged in *Hansen*, but that differences also existed. In reviewing our earlier cases addressing the degree of similarity necessary to satisfy the first *Just* element, we observed that no set standard had emerged. *Hansen*, 187 Mont. at 96, 608 P.2d at 1086 (citations omitted).

29. ¶ We then surveyed--and were persuaded by--holdings from other jurisdictions which recognized that, when the alleged similarities between crimes are nothing more than a sequence of events common to the crime, they are not sufficiently distinctive to satisfy the similarity element for admissibility of other acts evidence. *Hansen*, 187 Mont. at 96-97, 608 P.2d at 1086 (citations omitted). Adopting that position, we observed that "[n]umerous rapes follow the pattern of barroom pickup, voluntary entry into the offender's vehicle by the victim, driving to a remote area, advances, resistance and forcible intercourse," and concluded that this "sequence of

events has no distinctive qualities that distinguish the acts from other rapes thus bringing the events within the purview of the similarity element of the other crimes admission rule exception." *Hansen*, 187 Mont. at 97, 608 P.2d at 1086. As a result, we determined that the prior sexual assault was not sufficiently similar to the offense charged to satisfy the first element of the *Just* test. *Hansen*, 187 Mont. at 97, 608 P.2d at 1086.

30. ¶ We reach the same conclusion here. Tretteen and Auwen's testimony regarding prior sexual assaults on them by Rogers, as well as Gale's testimony about the incident which formed the basis for the charge in this case reflected the general barroom pickup scenario described in *Hansen*: spend time together in a bar, enter a vehicle together in a remote location or subsequently drive to a remote location, advances, resistance and forced sexual assault or intercourse. As was the case in *Hansen*, the sequences of events related by Tretteen and Auwen do not contain distinctive qualities that distinguish them from numerous other incidents resulting in sexual intercourse without consent so as to meet the similarity criterion of the Modified *Just* Rule.

31. ¶ The State does not advance an analysis of the similarity element pursuant to *Hansen*. It argues *Hansen* has been cited by other courts as consistent with the rule that, without "distinctive qualities," the prior acts evidence is insufficient to establish a "modus operandi," and simply operates as evidence of a propensity to commit the offense which Rule 404(b), M.R.Evid., prohibits. *See*, *e.g.*, *Idaho v. Martin* (1990), 796 P.2d 1007; *Utah v. Featherson* (1989), 781 P.2d 424. In other words, the State appears to posit that the *Hansen* "distinctive qualities" are not required to establish the similarity of the other acts to the offense charged but, instead, are pertinent to the intent, motive, common scheme or plan element.

32. ¶ It is true that, in *Hansen*, we also considered the similarities of the other crimes evidence in the context of whether a modus operandi existed. *Hansen*, 187 Mont. at 98-99, 608 P.2d at 1087. However, that portion of our analysis followed that set forth above relating solely to the similarity element. Thus, regardless of the principles for which other jurisdiction cite *Hansen*, *Hansen*'s similarity analysis remains part of Montana jurisprudence.

33. ¶ The State also attempts to analogize the facts in the present case to *State v. Wurtz* (1981), 195 Mont. 226, 636 P.2d 246. There, the defendant was driving around in his car when he pulled in front of a woman crossing an alley and invited her to engage in sexual acts with him. When she ignored him and walked around behind his car, he put his car in reverse as if to run over her, but she ran and hid between two houses until he passed. *Wurtz*, 195 Mont. at 229, 636 P.2d at 247. The

prosecution introduced prior acts evidence via a female high school student's testimony that the defendant drove by her as she walked down the street and stuck his tongue out in a suggestive manner. *Wurtz*, 195 Mont. at 229, 636 P.2d at 248. When the student walked into the high school parking lot, the defendant drove up to her, invited her to have sexual intercourse with him and offered to show her his penis. She rebuffed his advances, and he jumped out of the car and grabbed her. *Wurtz*, 195 Mont. at 229, 636 P.2d at 248. We concluded that the events were sufficiently similar to satisfy the similarity criterion of the Modified *Just* Rule. *Wurtz*, 195 Mont. at 236, 636 P.2d at 251. In doing so, we distinguished *Hansen* on the grounds that, unlike the common barroom pickup scenario described in *Hansen*, the defendant's method of driving down the street, selecting and approaching a woman who was walking, and pursuing her after she rebuffed his advances was not commonplace. *Wurtz*, 195 Mont. at 236, 636 P.2d at 251.

34. ¶ The same cannot be said here. As discussed above, the sequences of events to which Tretteen and Auwen testified--while similar to each other and to the events at issue--do not contain distinctive qualities distinguishing them from numerous other incidents resulting in sexual intercourse without consent. Therefore, pursuant to *Hansen*, we conclude the State's other acts evidence in this case does not meet the similarity criterion of the Modified *Just* Rule.

35. ¶ With regard to the third Modified *Just* Rule criterion, Rogers urges that the District Court erred in determining that the other acts evidence tended to establish motive, intent, plan or common scheme because consent was the only issue at trial. The State responds that Rogers' "prior acts show a conscious object to accomplish a goal, and a willingness to use any degree of threat or force to achieve that goal." Thus, according to the State, the challenged evidence shows a "motive, intent, plan, or modus operandi to obtain sex by means of threats and violence."

36. ¶ We rejected an argument similar to that advanced by the State regarding motive and intent in *State v. Keys* (1993), 258 Mont. 311, 852 P.2d 621. There, the defendant was charged with sexual intercourse without consent and the trial court admitted evidence of a prior indecent exposure on the basis it tended to prove Keys' intent or motive. *Keys*, 258 Mont. at 314, 852 P.2d at 623. On appeal after his conviction, Keys contended that the evidence violated Rule 404(b), M.R.Evid., because it had no bearing on whether his victim consented. *Keys*, 258 Mont. at 314, 852 P.2d at 623. The prosecution argued that the indecent exposure was "probative of Keys' motive and intent to commit sexual acts against nonconsenting female victims." *Keys*, 258 Mont. at 314, 852 P.2d at 623. We were not persuaded, and stated that "merely reciting an allowable purpose is not sufficient if the evidence

does not further that purpose or that purpose is not an issue in dispute." *Keys*, 258 Mont. at 317, 852 P.2d at 625. Since the only disputed issue in *Keys* was whether the victim consented, we observed that the prosecution's argument was, in essence, that Keys committed the crime charged because he was a person of poor character and that poor character "is precisely what prior acts evidence may *not* be used for." *Keys*, 258 Mont. at 317, 852 P.2d at 625. Here, the State's argument boils down to one that Rogers is a sexual predator, that is, a person of bad character. While that may be true, the general rule is that character evidence is not admissible to establish that the defendant acted in conformity with such character at the time in question. *See* Rule 404(b), M.R.Evid.

37. ¶ Moreover, as was the case in *Keys*, the determinative issue in the present case is Gale's intent--that is, whether she consented to intercourse--rather than Rogers' intent or motive. *See Keys*, 258 Mont. at 314, 852 P.2d at 623. Rogers clearly intended to have sexual intercourse with Gale and, if she consented, any criminal intent he may have had to have intercourse without her consent is irrelevant. *Keys*, 258 Mont. at 317, 852 P.2d at 625. Furthermore, "[t]o be admissible as relevant towards motive, the commission of the first crime or act should give rise to a motive or reason for the defendant to commit the second crime." *State v. Sadowski* (1991), 247 Mont. 63, 72, 805 P.2d 537, 542 (citation omitted). Here, the State has not shown such a connection between Rogers' other acts and the incident with Gale.

38. ¶ With regard to the District Court's determination that "the similarities are . . . probative of the Defendant's . . . plan or common scheme," Rogers contends primarily that the District Court's plan or common scheme rationale for admissibility merely equated acts the court considered similar in nature to satisfaction of the narrower concept of common scheme or plan. He relies on cases such as *State v. Harris* (Wash. Ct. App. 1984), 677 P.2d 202, 205. There, the prosecution contended that two separate rapes were part of a common scheme or plan because in each case the victim voluntarily entered a vehicle with the two defendants and was driven against her will to a remote location where the rape occurred. *Harris*, 677 P.2d at 205. The court rejected that argument, stating that the prosecution had "fallen into the common error of equating acts and circumstances which are merely similar in nature with the more narrow common scheme or plan." *Harris*, 677 P.2d at 205.

39. ¶ Under the Modified *Just* Rule test, it is clear that similarity of the other acts evidence which may satisfy the first element of the test is not sufficient to meet the third element, which requires that other acts evidence constitute proof of a defendant's common scheme or plan. In making the common scheme or plan

determination, we conduct a case-by-case analysis of the defendant's actions. In *State v. Brooks* (1993), 260 Mont. 79, 80, 857 P.2d 734, 735, for example, the other acts evidence was that the defendant had taken a minor child to a recreational setting for swimming and other activities during the day and then sexually assaulted the child later in the evening. The charged offense involved allegations that the defendant took two minor children to the local pool, played with them, and then sexually assaulted them in the pool. *Brooks*, 260 Mont. at 80-81, 857 P.2d at 735. We determined the defendant's actions demonstrated "a systematic plan to entertain boys or adolescents in a recreational setting in which they feel comfortable and then, immediately or soon after, to catch them off-guard and unexpectedly sexually assault them." *Brooks*, 260 Mont. at 81, 857 P.2d at 735. While there were minor differences between the events, we explained that

the plan was nonetheless systematic in that swimming or water games were used as a prelude to the assaults, and the boys were each in a vulnerable position because they wore fewer clothes while they were swimming, or in G.M.'s case, receiving a back rub, than they would have in a more formal setting.

*Brooks*, 260 Mont. at 81, 857 P.2d at 735.

40. ¶ In *Hansen*, on the other hand, we concluded that the conduct did not suggest a common scheme or plan, relying on an earlier case where we held evidence of a prior sexual act inadmissible, stating " '[s]exual acts, whether rape or no rape, originating in barroom pickups, powered by the urge, and consummated in automobiles, are entirely too common in this day and age to have much evidentiary value in showing a systematic scheme or plan.' " *Hansen*, 187 Mont. at 98, 608 P.2d at 1087 (quoting *State v. Sauter* (1951), 125 Mont. 109, 112, 232 P.2d 731, 732). We also have concluded that a defendant's other acts of verbal and physical abuse toward arresting officers were not admissible because they suggested spontaneous acts dictated by his character and the situation at hand rather than a common scheme or plan. *State v. Brown* (1990), 242 Mont. 506, 510, 791 P.2d 1384, 1386.

41. ¶ As discussed above and similar to *Hansen*, the other acts evidence in the present case, as well as the events underlying the offense charged, fit into the basic scenario of a barroom pickup leading to intercourse or attempted intercourse and an accusation that the events were nonconsensual. Moreover, the genesis of the events involving Tretteen, Auwen and Gale was substantially different. Tretteen asked Rogers to go for a drive and they left together. Auwen left the bar alone and

experienced a flat tire on her vehicle; Rogers and a friend had left the bar together, happened upon her and changed the tire. In the present case, Gale left the bar alone, Rogers followed her and then drove in front of her vehicle, cutting her off. Thus, while later events in all three cases bore some similarities, the manner in which the three incidents began simply does not tend to establish a common scheme or plan by Rogers under our cases. Indeed, the other acts evidence in this case, as in *Brown*, suggests only that Rogers will spontaneously take advantage of opportunities that present themselves for sexual encounters with women. In other words, Rogers' acts of sexual aggression are dictated by his character and the situation at hand; they do not reflect a systematic plan as in *Brooks*.

42. ¶ We conclude that the State's other acts evidence was not admissible to prove motive, intent, plan or common scheme under the third element of the Modified *Just* Rule. Moreover, the evidence was not relevant to the only issue in this case-- whether or not the intercourse between Rogers and Gale was consensual. Therefore, the only purpose for the evidence was to prove Rogers' character and that he acted in conformity with his character on the night in question. Rule 404(b) expressly prohibits the admission of other acts evidence for that purpose. *See* Rule 404(b), M. R.Evid.; *Matt*, 249 Mont. at 142, 814 P.2d at 56.

43. ¶ The State's other acts evidence having failed to satisfy the first and third elements of the Modified *Just* Rule, we need not address the fourth element. We hold that the District Court abused its discretion in admitting testimony about previous sexual assaults by Rogers.

44. ¶ Affirmed in part and reversed in part.

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER