No. 00-070

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 213

STATE OF MONTANA,

Plaintiff and Respondent.

v.

DANIEL J. DETONANCOUR,

Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Madison

Honorable Frank M. Davis, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Eric Rasmusson, Attorney at Law, Missoula, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Tammy K. Plubell,

Assistant Attorney General, Helena, Montana

Robert R. Zenker, County Attorney, Virginia City, Montana

Submitted on Briefs: January 18, 2001
Decided: October 25, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Daniel J. Detonancour was convicted of sexual assault, a felony, in a Madison County jury trial before the Fifth Judicial District Court. He appeals. We affirm.

¶2 We restate the issues on appeal as follows:

¶3 1. Whether the District Court abused its discretion by excluding evidence of the victim's conduct with Detonancour prior to the assault.

¶4 2. Whether the District Court abused its discretion by admitting evidence of Detonancour's conduct immediately after the assault.

¶5 3. Whether the District Court abused its discretion by allowing the emergency room nurse practitioner to testify about the mechanics of completing a rape kit.

¶6 4. Whether the District Court abused its discretion when it allowed the victim/witness advocate to testify about rape trauma syndrome (RTS).

¶7 5. Whether the jury instructions, reviewed as a whole, fully and fairly presented the law to the jury.

Factual and Procedural Background

¶8 On the evening of May 2, 1998, Donna Jenkins was visited at her home by her best friend, Jennifer Flesch, and Jennifer's 24-year-old son, Daniel Detonancour. Jennifer and Detonancour had come to borrow Jenkins's VCR. Sometime after midnight that same evening, Jenkins was awakened by a knock at her door. She saw that it was Detonancour and let him in. Jenkins and Detonancour's mother had been friends for ten years, so she thought she had no reason to be afraid of Detonancour. She assumed that he came over

because he needed someone to talk to.

¶9 The trial testimony differed as to what happened next. Jenkins testified that Detonancour shoved her to the floor and tried to take off her clothes. She said, "no-no," and attempted to physically resist him as Detonancour took off her shirt with one hand and held her to the ground with his other hand. Jenkins became frightened that if she continued to resist him, Detonancour might kill her, so she allowed him to take off her clothes. He then removed his clothes and had sexual intercourse with her.

¶10 Jenkins testified further that after Detonancour got up, he went into her daughter's bedroom and returned to the living room wearing nothing but a pair of her daughter's underwear and stood very close to her. In order to distract him, Jenkins asked Detonancour to make her a drink. While he was out of sight in the kitchen, she called 911. She only stayed on the line for about 15 seconds. The 911 operator attempted to find Jenkins's location from the limited information contained in her brief call. She suspected that the call related to a medical emergency and ultimately contacted a woman in Pony who is trained as a first responder to medical emergencies, Janet Zimmerman. Janet arrived at Jenkins's house to find her sitting in a chair with a blanket around her. Detonancour came into the livingroom after Janet arrived, and she asked him to leave.

¶11 Detonancour testified that after having seven or eight beers at the Pony Bar, he was on his way home when he noticed that all the lights were on in Jenkins's house. He decided to stop by and knocked on the door. Jenkins let him in, and they sat together on the couch. Jenkins began touching his hair and flirting with him. She told him that she wanted to have sex with him, and since his girlfriend had left him, he decided to accept. He testified that they had consensual sexual intercourse and that afterwards, Jenkins asked him to make her a drink. When Zimmerman arrived, he felt out of place so he finished getting dressed and left.

¶12 On May 13, 1998, the State filed an Information charging Daniel Detonancour with sexual intercourse without consent, a felony, in violation of § 45-5-503, MCA.

¶13 The State filed two motions in limine. It requested a court order prohibiting the defense from offering any evidence at trial concerning Jenkins's alleged sexual conduct and any evidence of Jenkins's use of alcohol. The District Court ruled that Detonancour could present evidence of Jenkins's alcohol use at the time of the offense and could not present evidence of her past sexual conduct, unless the past sexual conduct was with

Detonancour.

¶14 The defense also filed motions in limine. Specifically, Detonancour requested a court order: 1) generally prohibiting the State from introducing evidence at trial of any other crimes, wrongs, or acts allegedly committed by Detonancour; 2) prohibiting the State from referring to Jenkins as a "victim"; 3) prohibiting the State from introducing evidence of witness tampering charges filed against Detonancour's mother; 4) prohibiting the State from making any reference to allegations that Detonancour masturbated in front of Jenkins while wearing her daughter's underwear; and 5) prohibiting the State from introducing Detonancour's statement at the time of his arrest that "this is pretty bizarre for screwing an old lady."

¶15 The District Court granted the motion prohibiting the State from using the term "victim," referring to Detonancour's masturbation and introducing evidence of his mother's witness tampering charge. The court reserved ruling on the admissibility of Detonancour's statement.

¶16 Before the trial, the District Court granted a defense motion requesting that the jury be instructed on the lesser included offense of sexual assault.

¶17 At the conclusion of the trial, the jury returned a verdict of not guilty to the charge of sexual intercourse without consent, and guilty to the charge of sexual assault, a felony. The District Court later sentenced Detonancour to ten years in Montana State Prison with a portion suspended based on Detonancour's performance in the prison's sexual offender treatment program. The court classified Detonancour as a Level III sex offender.

Discussion

Issue 1

¶18 Did the District Court abuse its discretion by excluding evidence of Jenkins's conduct with Detonancour prior to the assault?

¶19 In reviewing a district court's decisions regarding the admissibility of evidence relating to the extrinsic sexual conduct of sexual assault victims, we determine whether the district court abused its discretion. *State ex. rel. Mazurek v. Dist. Court of Fourth Jud. Dist.* (1996), 277 Mont. 349, 353, 922 P.2d 474, 477.

¶20 Montana's rape shield law, codified at § 45-5-511, MCA, provides in relevant part:

(2) No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.

¶21 The compiler's comments to § 45-5-511, MCA, provide that:

[E]vidence pertaining to the sexual conduct of the victim is not admissible into evidence at trial. The purpose of this rule is to prevent the trial of the charge against the defendant being converted into a trial of the victim. There are only two exceptions . . . and both go directly to specific conduct which may be at issue in any given case. The first allows the defendant to introduce evidence pertaining to the victim's prior sexual conduct in relation to himself. *Thus, if the victim and defendant have been sexually intimate previous to the alleged rape, the defendant may use evidence to this effect.* [Emphasis added.]

*See also State v. Wing (1994), 264 Mont. 215, 223, 870 P.2d 1368, 1373.*

¶22 In this case, Detonancour sought to enter testimony at trial that Jenkins pulled him onto her lap at a birthday party two days prior to the assault. He argues that this could be construed as sexual conduct between the victim and Detonancour as contemplated in § 45-5-511, MCA. At trial, Detonancour argued that this testimony went to the heart of his defense: that he and Jenkins engaged in consensual sex.

¶23 Detonancour urges this Court to define "sexual conduct" as contemplated in the statute as including "lingering touches, smoldering glances, the surreptuous [sic] passing of notes, casual contact between persons at social gatherings, and other methods of flirtatious behavior which form the invitation to engage in consensual sexual contact or sexual intercourse." Arguing this issue before the District Court, Detonancour's counsel noted that "these people engaged in consensual sexual relations. They did. But he did so because she led him on."

¶24 We decline to adopt this broad definition of sexual conduct. As the compiler's comments note, if Detonancour and Jenkins had been sexually intimate previous to the assault, that evidence would have been admissible. However, flirtatious behavior is not,

contrary to Detonancour's opinion, an invitation to engage in sexual relations. An examination into the nuances of the victim's interactions with the defendant days before an alleged rape would effectively put the victim on trial. Not only is this evidence irrelevant to the issue of consent, it is precisely the harm that the rape shield statute is designed to prevent.

¶25 Both parties briefed this issue thoroughly and argued it before the District Court. We hold that the District Court did not abuse its discretion in excluding this testimony. It is simply not sexual conduct as contemplated by the statute.

## Issue 2

¶26 Did the District Court abuse its discretion by admitting evidence of Detonancour's conduct immediately after the assault?

¶27 Trial courts have broad discretion in determining whether evidence is relevant and admissible. We will not overturn a trial court's evidentiary ruling on appeal absent an abuse of discretion. *State v. Rogers*, 1999 MT 305, ¶ 11, 297 Mont. 188, ¶ 11, 992 P.2d 229, ¶ 11.

¶28 Detonancour challenges the admission of Jenkins's testimony that immediately after the assault he went to her daughter's room and came back to the livingroom wearing a pair of her daughter's panties. He also objects to the introduction into evidence of the panties. Before the trial, Detonancour filed a motion in limine to exclude this evidence, as well as evidence that he masturbated in front of Jenkins while wearing the panties. The District Court granted Detonancour's motion excluding testimony about the alleged masturbation, but allowed testimony about the panties, and admission into evidence of the panties, under the transaction rule, found in § 26-1-103, MCA.

¶29 The transaction rule provides that "where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Section 26-1-103, MCA. Admissibility under the transaction rule is "predicated on the jury's right to hear what transgressed immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence in the context in which the criminal act occurred. Acts of a defendant subsequent to the alleged commission of the crime, and intertwined therewith, are highly probative." *Wing,* 264 Mont. at 225, 870 P.2d at 1374 (citing *State v.*

*Moore* (1992), 254 Mont. 241, 246, 836 P.2d 604, 607).

¶30 We conclude that Detonancour's conduct was relevant as part of the transaction. The actions in question occurred immediately after the assault and before Jenkins called 911. Jenkins testified that this conduct made her fearful.

¶31 Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, M.R.Evid. Whether the probative value is outweighed by the prejudicial effect is within the trial court's discretion. *State v. Langford* (1994), 267 Mont. 95, 103, 882 P.2d 490, 495.

¶32 Detonancour contends that the testimony and introduction of the panties into evidence was prejudicial and designed to inflame the jury. The issue was fully briefed and argued before the District Court, and that court excluded testimony concerning the alleged masturbation. We hold the District Court properly exercised its discretion by allowing testimony that after the assault, Detonancour came into the livingroom wearing a pair of Jenkins's daughter's panties and excluding testimony about the alleged masturbation.

Issue 3

¶33 Did the District Court abuse its discretion by allowing the emergency room nurse practitioner, Margaret Ann Bortko, to testify about the mechanics of completing a rape kit?

¶34 Using the sexual assault evidence collection kit for demonstrative purposes, the State took Bortko step by step through the procedure involved in conducting a rape exam. This included testimony concerning combing for pubic hairs, collecting fingernail scrapings, drawing blood and performing a pelvic exam. Bortko next testified to Jenkins's conduct and emotional state during the exam, as well as the medical findings of the exam.

¶35 Detonancour objects to this testimony as irrelevant and not probative of the ultimate issue of consent. The State argues that the testimony was probative on the issue of consent, stating that the jury was entitled to know that Jenkins voluntarily cooperated with the tedious and uncomfortable process.

¶36 We agree that this extensive, detailed testimony was not probative of the ultimate issue of consent and that the District Court abused its discretion in admitting it.

¶37 Section 46-20-701(1), MCA, provides that "[a] cause may not be reversed by reason

of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial."

¶38 We recently adopted a two-step analysis to determine whether an error prejudiced a criminal defendant's right to a fair trial and is therefore reversible. *State v. Van Kirk*, 2001 MT 184, ¶ 37, 306 Mont. 215, ¶ 37, ___ P.3d ___ , ¶ 37. The first step is to determine whether the error is a structural error or a trial error. *Van Kirk*, ¶ 37. Structural error is typically of constitutional dimensions, precedes the trial, and undermines the fairness of the entire proceeding. *Van Kirk*, ¶ 38. Structural errors are automatically reversible. *Van Kirk*, ¶ 39.

¶39 Trial errors typically occur during presentation of the case to the jury and are subject to review under the harmless error statute, § 46-20-701(1), MCA. *Van Kirk*, ¶ 40.

¶40 The error in this case was admitting evidence that was not relevant. This is a trial error, so we proceed to the determination of whether the error was harmless.

¶41 In *Van Kirk*, we adopted the "cumulative evidence" test to determine whether there is a reasonable probability that the erroneously admitted evidence might have contributed to the conviction. *Van Kirk*, ¶ 43. This test looks to whether the fact finder was presented with admissible evidence that proved the same facts as the tainted evidence. **Van Kirk**, ¶ 44. In addition, the quality of the tainted evidence, in comparison with the quality of the admissible evidence, must be such that there is no reasonable possibility that it might have contributed to the defendant's conviction. *Van Kirk*, ¶ 47.

¶42 The State offered the testimony in this case to buttress Jenkins's contention that she did not consent to sexual intercourse with Detonancour. Detonancour stipulated before trial that he and Jenkins had sexual intercourse, so the only issue at trial was consent. Accordingly, all the State's evidence centered around proving lack of consent. This included: Jenkins's testimony that she did not consent; her testimony concerning Detonancour's conduct after the assault and her own memory of the rape exam; the testimony of the communication's officer who received Jenkins's 911 call; the testimony of Janet Zimmerman concerning her arrival at the Jenkins's house in response to the 911 call; and the testimony of the deputy sheriff and sheriff concerning events at Detonancour's home when they arrived to question him.

¶43 We conclude that the jury was presented with enough cumulative, admissible

evidence on the issue of consent. Moreover, we conclude that the introduction of the inadmissible rape exam evidence was harmless because, qualitatively, and in comparison to the admissible evidence, specifically, the victim's testimony concerning the exam, there is no reasonable possibility that the erroneously admitted evidence might have contributed to Detonancour's conviction. The admission of the testimony on the mechanics of completing the rape exam was harmless error, and it did not prejudice Detonancour.

## Issue 4

¶44 Did the District Court abuse its discretion when it allowed the victim/witness advocate, Amy Jo Cooksey, to testify about rape trauma syndrome (RTS)?

¶45 Cooksey testified about RTS and about her observations of Jenkins's behavior. Detonancour argues that she was not qualified as an expert in RTS because she had no formal education.

¶46 Rule 702, M.R.Evid., provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

¶47 RTS is a post-traumatic stress disorder which persons subject to severe trauma such as rape may experience. *Rogers*, ¶ 15. We have permitted persons qualified as an expert in RTS to testify regarding the presence of physical and psychological symptoms of RTS in a victim when consent to sexual intercourse is at issue. *Rogers*, ¶ 15.

¶48 The determination of the qualification and competency of expert witnesses rests largely with the trial judge, and without a showing of an abuse of discretion, such a determination will not be disturbed. *Cottrell v. Burlington Northern R. R. Co.* (1993), 261 Mont. 296, 301, 863 P.2d 381, 384. The degree of a witness's qualification affects the weight rather than the admissibility of the testimony. *State v. Berg* (1985), 215 Mont. 431, 434, 697 P.2d 1365, 1367.

¶49 Cooksey testified that she had one year and seven months experience in her position as criminal justice victim witness advocate and eight and a half years experience working for the Dillon Police Department. In the course of her work with the Dillon Police Department, she worked on the rape investigative team and attended numerous trainings and seminars on RTS. She estimated that she had 200 hours of training dealing with

victims, not all of which was specific to RTS.

¶50 We find that the District Court did not abuse its discretion in allowing Cooksey to testify as an expert on RTS. She had training and experience in RTS and working with rape victims. Although it is true, as Detonancour points out, that she had no formal education in psychology, the jury could consider this factor in weighing her testimony.

¶51 Detonancour also objects to Cooksey's testimony that Jenkins's description of the assault was consistent the eight times it was told to her and was also consistent with the description she gave law enforcement officials. He argues that this testimony was an improper comment on Jenkins's credibility.

¶52 "Failure to make a timely objection during trial constitutes a waiver of the objection." Section 46-20-104(2), MCA. This Court will not hold a district court in error when it has not been given an opportunity to correct itself. *State v. Weeks* (1995), 270 Mont. 63, 85, 891 P.2d 477, 490.

¶53 This testimony was not objected to at trial; therefore, we decline to address this issue.

Issue 5

¶54 Did the jury instructions, reviewed as a whole, fully and fairly present the law to the jury?

¶55 Detonancour's final point of error deals with two jury instructions. Instruction #1, which Detonancour objects to, stated: "As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the *preponderance* of all the evidence in the case, both direct and circumstantial." (Emphasis added.) Detonancour contends that this instruction constituted a burden reduction upon the State to prove each and every element of the offense beyond a reasonable doubt. He notes that Montana Criminal Jury Instruction No. 1-017 on direct and circumstantial evidence does not include the "preponderance of all the evidence" phrase.

¶56 The State concedes that the model jury instructions would have been preferable to the one given but argues that the District Court's divergence from this instruction did not prejudice Detonancour because the other instructions emphasized the State's burden of

proving the elements of the offense charged beyond a reasonable doubt.

¶57 In criminal cases, jury instructions must be reviewed as a whole, and if they fully and fairly present the law to the jury, the jury has been properly instructed. *State v. Bradley* (1995), 269 Mont. 392, 395, 889 P.2d 1167, 1168. The test to be applied is whether, when an instruction is considered as a part of the whole body of instructions, the instruction is prejudicial to the appealing party. *State v. Longstreth*, 1999 MT 24, ¶ 15, 295 Mont. 457, ¶ 15, 984 P.2d 157, ¶ 15.

¶58 We agree with the State that the model jury instruction explaining the difference between direct and circumstantial evidence is preferable to the Instruction #1 given by the trial court here. We conclude, however, that the District Court's divergence from this instruction did not prejudice Detonancour.

¶59 Immediately after reading Instruction #1, the court stated, "Now don't be misled by that term 'preponderance.' That doesn't refer to the standard of reasonable doubt, which the State has to prove the guilt or innocence of a Defendant. It only refers to the mass of evidence."

¶60 Parts 3 & 4 of Instruction #2 given by the District Court stated that, "3. The state of Montana has the burden of proving the guilt of the defendant beyond a reasonable doubt. 4. Proof beyond a reasonable doubt is proof of such a convincing character that a reasonable person would rely and act upon it in the most important of his or her affairs. Beyond a reasonable doubt does not mean beyond any doubt or beyond a shadow of a doubt."

¶61 In addition, the instructions on the elements of sexual intercourse without consent, misdemeanor sexual assault and felony sexual assault all included the following language:

> If you find from your consideration of all the evidence that all of these elements have been proved beyond a reasonable doubt, then you should find the defendant guilty.
>
> If on the other hand, you find from your consideration of all the evidence that any of these elements have not been proved beyond a reasonable doubt then you should find the defendant not guilty.

¶62 We conclude that when the instructions are read as a whole, the jury was properly instructed on the burden of proof and Detonancour was not prejudiced by the use of the phrase "preponderance" in Instruction #1.

¶63 Detonancour also contends that the jury should have been instructed that the definition of "without consent" should have only been applied to the offense of sexual intercourse without consent.

¶64 The jury was instructed on the elements of the crime of sexual intercourse without consent as well as the elements of misdemeanor and felony sexual assault. Detonancour's complaint lies with the fact that the jury was also given an instruction which defined "without consent" as it applies to the crime of sexual intercourse without consent but was not instructed that this definition did not apply to sexual assault. The ordinary meaning of "without consent" applies to the offense of sexual assault. *Rocky Mt. Bank v. Stuart* (1996), 280 Mont. 74, 80, 928 P.2d 243, 247 (words used by the legislature must be given their usual and ordinary meaning).

¶65 We find that the District Court's failure to give this limiting instruction did not prejudicially affect Detonancour's substantial rights. The jury was instructed on the elements of the crime charged and the elements of the lesser included offenses. If, in fact, the jury applied the "without consent" definition to the offense of sexual assault, the State's burden of proof would actually have been more onerous.

¶66 The District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ PATRICIA COTTER

/S/ TERRY N. TRIEWEILER

Justice James C. Nelson specially concurs and dissents.

¶67 I concur in our discussion and resolution of Issues 1, 2 and 4. I dissent from our discussion and resolution of Issue 5. As to that Issue, I would reverse and remand for a new trial.

¶68 One of the most fundamental principles underlying our system of criminal justice is the requirement that the State must prove each element of any offense with which the accused is charged "beyond a reasonable doubt." The cases are legion. *See*, *In re Winship* (1970), 397 U.S. 358, 363-64, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368; *State v. Croteau* (1991), 248 Mont. 403, 410-11, 812 P.2d 1251, 1255-56. Montana, in fact, has codified this principle, statutorily requiring acquittal where the State fails in meeting this burden of proof--§ 46-16-204, MCA--and by statutorily mandating that trial juries be instructed specifically that in criminal cases, guilt must be established beyond a reasonable doubt--§ 26-1-403(2), MCA.

¶69 To that end, courts have historically found disfavor with any jury instruction that reduces the state's burden of proof. *See, for example, Mullaney v. Wilbur* (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508; *Sandstrom v. Montana* (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39. *See also State v. Lundblade* (1981), 191 Mont. 526, 530, 625 P.2d 545, 548 (instructions, which, as a whole, fail to apprise the jury that the state has the burden to prove every element of the crime beyond a reasonable doubt, are inadequate).

¶70 Indeed, and of particular importance in the case at bar, this Court has specifically criticized criminal instructions which have included references to a preponderance of the evidence standard within the charge to the jury. *See State v. Felker* (1903), 27 Mont. 451, 461, 71 P. 668, 671 (an instruction defining "preponderance of the evidence," though not reversible in view of the other instructions, has no place in a criminal trial); *State v. Francis* (1920), 58 Mont. 659, 668, 194 P. 304, 307 (an instruction which assumes that facts may be proven by a "preponderance of the evidence" has no place in a criminal trial); *Croteau*, 248 Mont. at 411, 812 P.2d at 1256 (instruction which effectively reduces state's burden from "proof beyond a reasonable doubt" to "a preponderance of the evidence" is reversible error). *Croteau* followed our decisions in *State v. Jones* (1914), 48 Mont. 505, 523-24, 139 P. 441, 448; *State v. Darchuck* (1945), 117 Mont. 15, 21, 156 P.2d 173, 175; and *State v. Carns* (1959), 136 Mont. 126, 139, 345 P.2d 735, 743.

¶71 Here, the trial court, apparently *sua sponte* and over objection, instructed the jury that the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with a *preponderance* of all the

evidence, both direct and circumstantial. That, of course, is not a correct statement of the law. The jury must, as noted above, be unanimously convinced that the facts necessary to prove each element of the offense charged are established by the state by competent evidence, beyond a reasonable doubt.

¶72 The fact that the trial court then told the jury not to be "mislead" by the preponderance instruction--a good indication, without more, that the instruction was incorrect even in the court's view--and the fact that the court also gave a correct reasonable-doubt instruction did not resolve the error. When viewed through the lens of the proper standard of review, these conflicting oral and written instructions "as a whole" were hopelessly confusing.

¶73 I simply cannot agree that the jury could, at one and the same time, be expected to determine the facts from the entirety of the evidence (both direct and circumstantial) by a "preponderance" standard, but still hold the State to its burden of proof beyond a reasonable doubt. Courts should not impose on trial juries the necessity to engage in such mental legerdemain. Inevitably, as here, confusing and improper instructions deprive the accused of his rights to a fair trial and trial by jury guaranteed under Article II, Sections 24 and 26 of the Montana Constitution. Therefore, I would reverse on the basis of the court's Instruction No. 1 and remand for new trial.

¶74 Similarly, I disagree with our analysis of the court's giving of Instruction No. 11. The definition of "without consent" at § 45-5-501(1), MCA, is statutorily limited to its use in § 45-5-503, sexual intercourse without consent. Presumably, if the legislature had wanted the "without consent" definition to apply to sexual assault, § 45-5-502, MCA, it would not have so limited the definition. *See State v. Haser*, 2001 MT 6, n.2, 304 Mont. 63, n.2, 20 P.3d 100, n 2.

¶75 The trial court, in my view, should have instructed that the "without consent" definition did not apply to sexual assault. In failing to do so the court misstated the law to the jury and again mislead the fact finders as to the elements of sexual assault.

¶76 If, as our opinion states, the "ordinary meaning" of "without consent" (whatever that is) applied to sexual assault, the jury was not so instructed. As far as the fact finders knew, the crime of sexual assault included a "without consent" element that was identical to the "without consent" element of sexual intercourse without consent--a point of law that even the State concedes is incorrect.

¶77 At a minimum, the trial court must explain or define the crime to the jury. *State v. Campbell* (1972), 160 Mont. 111, 114, 500 P.2d 801, 803. It requires no great leap of logic to conclude that mis-defining the elements of the crime--as the court did here--constitutes as egregious an error as not defining the elements of the crime at all. I would, therefore, reverse on the basis of the court's Instruction No. 11 as well.

¶78 Finally, while I do not necessarily disagree with the Court's harmless error analysis as to Issue 3, I still must express my dismay in the trial court's allowing testimony detailing the methodology of the rape kit examination. This testimony was wholly unnecessary to establish the victim's lack of consent--her own testimony was unequivocal on that point and other evidence at trial strongly substantiated her version of the event.

¶79 In my view, testimony concerning the mechanics of the rape kit examination does little except inflame the passions of the jury. While that is bad enough, perhaps even worse is the fact that this sort of testimony is embarrassing and humiliating to the rape victim, who has had to undergo an intimate and uncomfortable procedure at a time when she has been violated physically, mentally and emotionally. To require the victim to endure having the mechanics of this medical/forensic procedure recounted in a public trial, to one's peers in the community, should not be countenanced except under the most extreme and necessary circumstances--none of which were at issue here.

¶80 By virtue of the instructional error discussed above, I would reverse and remand for a new trial. I dissent from our failure to do so.

/S/ JAMES C. NELSON