No. 94-222

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995


STATE OF MONTANA,

    Plaintiff and Respondent,

    -vs-

LAWRENCE CLARIC,

    Defendant and Appellant.

FILED

MAY 9 - 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Laurence J. Ginnings, Ginnings Law Office, Missoula,
Montana

    For Respondent:

        Hon. Joseph P. Mazurek, Attorney General, Jennifer
Anders, Assistant Attorney General, Helena, Montana;
Mitchell Young, Deputy Lake County Attorney,
Polson, Montana


Submitted on Briefs:  January 19, 1995

Decided:  May 9, 1995

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Defendant, Lawrence Claric was charged with felony assault in violation of § 45-5-202(2)(a), MCA, and criminal mischief, a misdemeanor in violation of § 45-6-101(1)(a), MCA. Following a jury trial held in the Twentieth Judicial District Court, Lake County, the jury convicted Claric of both charges. The District Court entered judgment upon the verdict on January 24, 1994. Claric appeals from this judgment.

Claric raises two issues on appeal:

1.   Whether the District Court properly instructed the jury on justifiable use of force?

2.   Whether Claric was prejudiced by the District Court's ruling which excluded defense witnesses from the courtroom but did not similarly exclude the State's witnesses?

The following facts gave rise to the charges against Claric and his subsequent conviction. Claric lives on Detwiler Road which is located in Arlee, Montana. The ownership of Detwiler Road is disputed, and Claric believes he owns the road. On July 1, 1993, Merle McCready drove down Detwiler Road in order to visit his fiance, Charlotte Foust, who also lives on Detwiler Road. McCready encountered Claric, and observed that Claric was digging in the road with a crowbar. As McCready drove past, Claric shoved the crowbar into the ground and said something to McCready. McCready stopped his truck and walked over to Claric to ask him why he was digging in the road. McCready and Claric got into an argument over McCready's use of the road.

Claric's wife, Verna Claric, was in the house and heard the

2

argument. Verna testified she was afraid for her husband, so she telephoned her son-in-law, Butch Pierce, and asked him to come over right away.

McCready testified that after arguing for a few minutes, he got back into his truck. As McCready tried to drive away, Claric grabbed the driver's side mirror and pulled loose one of the screws which fastened the mirror to the truck. McCready then got out of the truck and asked Claric who was going to pay for the damage.

According to McCready, Verna Claric, who had come out of the house, stepped up to McCready and grabbed him around his neck. McCready claims he grabbed her hands, and put them down by her side. Verna testified that she merely put her hands on McCready's shoulder and he knocked her out of the way. After this incident, McCready testified that Claric hit him in the chest with a shovel. Claric attempted to hit McCready with the shovel again, but McCready was able to block the shovel with his right forearm. About this time, Pierce and Claric's daughter drove up. Pierce got out of his pickup and a fight ensued between Pierce and McCready. At some point during the fight, McCready's shirt came off. After losing his shirt, McCready moved to the back of the pickup, with his back to Claric. Pierce and McCready were still fighting when McCready felt a sharp sting on the back of his head, and he knew someone had hit him with an object. McCready turned and saw Claric run off with a shovel. The fight broke up moments later, and McCready drove to his fiance's residence to call the police.

Lake County Deputy Sheriff Kerry Reynolds was dispatched to

the scene as a result of two 911 calls, one from the Claric residence and one from the Foust residence. Deputy Reynolds testified he went to McCready's fiance's residence first, because the report indicated that the injured party was there. Upon approaching McCready, who was sitting out in front of the house, Deputy Reynolds noticed that McCready did not have a shirt on, and he saw blood on the front of McCready's chest, back, and neck area. Deputy Reynolds asked McCready what had transpired. While explaining the story to Deputy Reynolds, McCready showed him his right forearm which had a bump and an abrasion, and told him that he had received the injury by blocking the blow from the shovel. McCready also explained that the mirror had been pulled loose from his truck. Deputy Reynolds testified that he observed a gash on the back of McCready's head, and that McCready appeared shaken, but was calm and spoke in a normal tone of voice.

After receiving McCready's version of the story, Deputy Reynolds went to the Claric residence and observed Claric standing outside. Deputy Reynolds asked Claric what had happened. Claric was very agitated, pacing around yelling that he owned the road and could do whatever he wanted, and that people were vandalizing his property. After explaining to Claric that he could be facing a very serious assault charge, Claric, Pierce, Verna, and Claric's daughter, who were all present, stated that McCready had started the fight. Claric stated that McCready was threatening him so he told Verna to call Pierce. Verna reported that McCready had Claric cornered and was threatening him, so she went to the house to call

4

Pierce. Verna stated that when she came back outside Claric and McCready were really arguing so she got between them, at which point McCready pushed her.

Pierce stated that when he arrived McCready hit him, and they fought until McCready left. When Deputy Reynolds asked Claric if he had hit McCready with a shovel, Claric responded that he could not remember, but did state that he had a shovel with him where he was working on the road. Deputy Reynolds testified that no one would tell him details about the incident, and were very evasive about what happened. Deputy Reynolds also testified that while Pierce and Verna had stated they had been physically assaulted, he did not observe any injuries to either Pierce or Verna, and neither complained of any injury.

Upon leaving the Claric residence, Deputy Reynolds noticed McCready's shirt laying in the road. Deputy Reynolds then went back to the Foust residence to look at McCready's pick-up. Deputy Reynolds observed that one rivet holding the driver's side mirror to the door was torn loose from the sheet metal. Deputy Reynolds documented his investigation in a written report which was admitted at trial.

1. JURY INSTRUCTIONS

Claric maintains that he had two theories which were essential to his defense: (1) that Claric was justified in his use of force because he was defending his property; and (2) that Claric was justified in using force against McCready because he had a reasonable apprehension of bodily harm for himself and members of

his family. Claric argues that the District Court erred by refusing five of his proposed instructions which he claims were necessary to fully and fairly instruct the jury.

This Court's standard of review of jury instructions in criminal cases is to determine whether the instructions as a whole, fully and fairly instruct the jury on the law applicable to the case. State v. Brandon (1994), 264 Mont. 231, 237, 870 P.2d 734, 737, citing State v. Lundblade (1981), 191 Mont. 526, 529-30, 625 P.2d 545, 548. While the District Court must instruct the jury on each issue or theory which is supported by the record, Brandon, 870 P.2d at 737, the defendant is not entitled to have the jury instructed on every nuance of its theory of the case. State v. Webb (1992), 252 Mont. 248, 253, 828 P.2d 1351, 1354, citing State v. Graves (1981), 191 Mont. 81, 622 P.2d 203.

Claric first argues that in refusing his proposed instructions, Nos. 16 and 17, the court eliminated one of his defense theories from the jury's consideration; namely that Claric was entitled to use force to eject McCready, a trespasser, from his property.

This Court has previously held that a court may properly refuse to instruct the jury on a defense theory where there is no evidence in the record supporting each element of the defense. State v. Owens (1979), 182 Mont. 338, 347, 597 P.2d 72, 77. The defense of justifiable use of force in defense of property is defined at § 45-3-104, MCA. That statute provides in relevant part:

6

A person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's trespass on . . . real property . . . [that is] lawfully in his possession. [Emphasis added].

While Claric contends that McCready was trespassing on his property, and refused repeated requests to leave, he also admits that the ownership of Detwiler Road is in dispute. Other than making personal declarations of ownership, Claric did not present any evidence in support of his claims of ownership. We conclude that the record failed to demonstrate that McCready was trespassing on Claric's property and therefore Claric had a legal right to evict McCready. Because Claric failed to prove that he had a legal right to evict McCready, we conclude that the District Court properly refused Claric's instructions regarding defense of property.

Claric's second theory of the case, was that he was justified in using force against McCready because he had a reasonable apprehension of bodily harm for himself and other members of his family. Claric contends the court erred by refusing his proposed instructions Nos. 14 and 15 because they would have instructed the jury that the "defendant was free to act upon his perceptions, if reasonable, and was not bound to exercise force only if faced with actual danger."

The District Court concluded that the proposed instructions were adequately covered in its instructions. We agree, and conclude that the District Court adequately instructed the jury that Claric was free to act upon his perceptions if reasonable.

7

The relevant portion of the instruction provided by the court states:

(4) The defendant must actually believe that the danger exists, that is, use of force by him is necessary to avert the danger and that the kind and amount of force which defendant uses is necessary;

(5) The defendant's belief, in each of the aspects described, is reasonable even if it is mistaken.

We conclude that the court properly refused Claric's instructions because they were repetitive. State v. Hess (1992), 252 Mont. 205, 214, 828 P.2d 382, 388. In addition, the instruction given in this case regarding the justifiable use of force has been previously approved by this Court as an accurate statement of the law. State v. Stone (1994), 266 Mont. 345, 348-49, 880 P.2d 1296, 1298-99. The District Court was not required to provide anything more.

Finally Claric argues that the court erred by refusing to include his proposed instruction No. 18 which provided:

Where the assailant is a much larger and stronger man than the Defendant, the latter may reasonably apprehend great bodily harm, even though his assailant is unarmed.

It is well established that the defendant is not entitled to have the jury instructed on every nuance of its theory of the case. Webb, 828 P.2d at 1354. While the jury instructions did not present every nuance of Claric's case, the instructions given accurately reflected the law of self-defense and are therefore sufficient. Moreover, Claric was afforded the opportunity to argue in closing that McCready, a younger and larger man, caused reasonable apprehension of grievous bodily injury in Claric, an

8

older and frail man. In addition, because both Claric and McCready were present in the courtroom, the jury was capable of observing both men and noting the size and age difference. Therefore, we conclude that the District Court did not err by refusing Claric's proposed instruction No. 18, and hold that the court properly instructed the jury.

## 2. EXCLUSION OF WITNESSES

Before the court had received testimony in this case, the State moved to exclude witnesses from the courtroom. The court granted the State's motion, however, it allowed Deputy Reynolds to stay in the courtroom as the State's representative. The effect of the Court's ruling was to exclude all of the defense witnesses but none of the State's witnesses. Claric contends that the exclusion of the defense witnesses resulted in prejudicial error.

Rule 615, M.R.Evid., provides for the exclusion of witnesses at the request of a party, and we have held that the operation of the rule is left to the sound discretion of the trial court. State v. Radi (1975), 168 Mont. 320, 326, 542 P.2d 1206, 1210; State v. Meidinger (1975), 160 Mont. 310, 320, 502 P.2d 58, 64.

Rule 615, M.R.Evid., provides three categories of witnesses who may be exempted from an order of exclusion: (1) parties; (2) a representative of a party not a natural person; and (3) a person necessary for the presentation of evidence. In regards to the exemption of Deputy Reynolds under the exclusionary rule this Court has recognized that law enforcement personnel may be exempted from the exclusionary rule. Meidinger, 502 P.2d at 64; State v. Walsh

9

(1924), 72 Mont. 110, 117, 232 P. 194, 197. Law enforcement officers are excluded as a representative of a party according to subsection (2) of the rule. See, United States v. Auten (5th Cir. 1978), 570 F.2d 1284, cert. denied, Auten v. United States (1978), 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247; United States v. Thomas (9th Cir. 1987), 835 F.2d 219, 223, cert. denied, Thomas v. United States (1988), 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204.

A similar situation occurred in Radi, where the court granted the State's motion to exclude witnesses, but exempted law enforcement officers, thereby excluding all defense witnesses and none of the prosecution witnesses. In Radi, we held that the district court's ruling was not reversible error in light of the express provision allowing the exemption of a "party's representative." Radi, 542 P.2d at 1210. While so holding, we went on to advise future courts to exclude all witnesses who are to testify from the courtroom. Radi, 542 P.2d at 1210.

Notwithstanding, in the instant case, Claric failed to demonstrate that he was prejudiced by the District Court's ruling. Deputy Reynolds was not an eye witness to the incident, and his only role at trial was to describe what he learned from the participants and other witnesses who observed the incident. Deputy Reynolds documented his observations in a report which was consistent with his testimony and admitted as evidence at trial. If Deputy Reynolds' testimony was not consistent with his report, he was subject to impeachment. Accordingly, we conclude that while the District Court should have excluded Deputy Reynolds from the

10

courtroom because he was a witness who would be testifying, we hold that the court did not commit reversible error, because Claric was not prejudiced by the ruling.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11