No. 02-364

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 37

STATE OF MONTANA,

Plaintiff and Respondent,

v.

KEVIN J. FLOWERS,

Defendant and Appellant.

APPEAL FROM:     District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, Cause No. DC-01-48,
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Scott B. Spencer, Attorney at Law, Libby, Montana

For Respondent:

Hon. Mike McGrath, Attorney General; Carol E. Schmidt,
Assistant Attorney General, Helena, Montana

Bernie Cassidy, Lincoln County Attorney; Robert Slomski, Deputy County
Attorney, Libby, Montana

Submitted on Briefs:  June 26, 2003

Decided:   February 24, 2004

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Appellant Kevin Flowers was convicted of one count of burglary, one count of theft and two counts of violating privacy in communications in the Nineteenth Judicial District Court, Lincoln County.  Kevin appeals.  We affirm.

¶2     We restate the issues on appeal as follows:

¶3     1.  Did the District Court err when it allowed Lieutenant Neuman to remain in the courtroom after the other witnesses had been excluded?

¶4     2.  Did the District Court abuse its discretion when it admitted evidence of Kevin's actions at Jerry Croskrey's residence?

¶5     3.  Did the District Court abuse its discretion when it admitted evidence of the handwritten phrase on the cardboard box top?

¶6     4.  Did the District Court abuse its discretion when it admitted evidence that Pamela had a restraining order against Kevin prior to August 6, 2001?

¶7     5.  Should Kevin be granted a new trial because of cumulative error?

¶8     6.  Did the District Court abuse its discretion when it denied Kevin's motion for a directed verdict?

## BACKGROUND

¶9     Kevin and Pamela Flowers were married in 1981.  They have two teenage sons, Zachery and Caleb.  In February of 2001, Pamela requested that Kevin move out of the family home, which was located in the Whispering Pines subdivision near Fortine, Montana (the Whispering Pines home).  Pamela made this request because of problems she and Kevin were having with their marriage.  Kevin moved out of the Whispering Pines home in March

of 2001. Pamela filed for a divorce in July of 2001.

¶10    Sometime during the summer of 2001, Pamela began dating Jerry Croskrey. At 8:00 a.m. on August 6, 2001, Pamela was at Croskrey's home when she received a telephone call from her son Zachery. While speaking to Zachery, Pamela heard Kevin's voice in the background. Specifically, Pamela testified that Kevin stated: "Zachery, is that your Mom? Is that your Mom? Tell her I'm coming to get her and I'm going to kill her. I'm going to kill her." Upon hearing Kevin's statements, Pamela told Zachery to get away from Kevin. She then hung up the phone and informed Croskrey of the incident.

¶11    A few moments later the phone rang again. Croskrey picked up the phone and stated: "This is Jerry." Croskrey then heard Kevin's voice on the other end of the phone. Croskrey testified that Kevin threatened both him and Pamela, and used profanity. Croskrey further testified that after about two minutes, Kevin hung up the phone.

¶12    Pamela called the Lincoln County Sheriff's Office and advised them of the situation. Pamela also called a Justice of the Peace and attempted to get a restraining order against Kevin. Pamela and Croskrey remained at Croskrey's residence until approximately 11:40 a.m. when Croskrey left to go to the post office. Before he left, Croskrey and Pamela agreed that if Kevin were to arrive, Pamela would run to John Bower's home and request help. Bower was Croskrey's closest neighbor.

¶13    After Croskrey left, Pamela noticed Kevin's truck on the highway near Croskrey's residence. She responded by running to Bower's home and calling 911. A few minutes later, Pamela observed Kevin's truck pull out of Croskrey's driveway and back onto the highway. She then returned to Croskrey's residence. Croskrey arrived at approximately the

3

same time. Croskrey and Pamela surveyed Croskrey's home and noted that the latch on the door was broken. They also noted that several items were missing, including Pamela's purse and a gold necklace.

¶14 Shortly thereafter, Lieutenant Matthew Neuman of the Lincoln County Sheriff's Department located Kevin in the driveway of the Whispering Pines home. When questioned by Lieutenant Neuman, Kevin admitted that he had been at Croskrey's residence earlier that day. Kevin further admitted that he had taken Pamela's purse. Lieutenant Neuman retrieved Pamela's purse from Kevin's truck and took him into custody.

¶15 After Kevin was taken into custody, Pamela and Croskrey traveled to the Whispering Pines home to check for damage. While there, they found the remaining items missing from Croskrey's home in Kevin's truck. Pamela and Croskrey also found a cardboard box top with the following phrase written on it: "Your [sic] just a hore [sic] and you have betrayed everyone around you and now you will die." Pamela testified that she recognized the handwriting as Kevin's.

¶16 On August 17, 2001, the Respondent, State of Montana, filed an information charging Kevin with one count of burglary, in violation of § 45-6-204, MCA (1999), two counts of theft, in violation of § 45-6-301, MCA (1999), and two counts of violating privacy in communications, in violation of § 45-8-213, MCA (1999). Kevin pled not guilty to all five counts on August 20, 2001.

¶17 In December of 2001, Kevin entered into a plea agreement with the State. The agreement was later withdrawn, however, and the case was set for trial. Prior to trial, Kevin filed several pre-trial motions, most of which were denied by the District Court. The case

4

proceeded to jury trial on March 12, 2002. On March 13, 2002, the jury found Kevin guilty of one count of burglary, one count of theft, and two counts of violating privacy in communications. Kevin was sentenced on April 3, 2002. He appealed on April 5, 2002.

## STANDARD OF REVIEW

¶18 This Court reviews a district court's application of Rule 615, M.R.Evid., which addresses the exclusion of witnesses, as we would a conclusion of law. *State v. Osborne*, 1999 MT 149, ¶ 28, 295 Mont. 54, ¶ 28, 982 P.2d 1045, ¶ 28. A district court's conclusions of law are reviewed for correctness. *Osborne*, ¶ 28.

¶19 We review a district court's evidentiary rulings to determine whether the district court abused its discretion. *State v. Bingman*, 2002 MT 350, ¶ 31, 313 Mont. 376, ¶ 31, 61 P.3d 153, ¶ 31. A district court has broad discretion to determine whether evidence is relevant and admissible. Absent a showing of abuse of discretion, we will not overturn a court's evidentiary determination. *Bingman*, ¶ 31.

¶20 The standard of review of a district court's denial of a motion for a directed verdict is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Johnson* (1996), 276 Mont. 447, 450, 918 P.2d 293, 294. The decision to direct a verdict at the close of the State's case lies within the sound discretion of the district court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Romannose* (1997), 281 Mont. 84, 88, 931 P.2d 1304, 1307.

DISCUSSION

¶21 Did the District Court err when it allowed Lieutenant Neuman to remain in the courtroom after the other witnesses had been excluded?

¶22 Prior to trial in the instant case, Kevin requested that all of the witnesses be excluded from the courtroom. Kevin's request was made pursuant to Rule 615, M.R.Evid., which provides, in pertinent part:

> At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of
>
> . . . .
>
> (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney[.]

¶23 The District Court granted Kevin's request and excluded the witnesses from the courtroom. However, because the State had designated Lieutenant Neuman as its representative, the District Court determined that he was exempt from Rule 615, M.R.Evid. Thus, Lieutenant Neuman was allowed to remain in the courtroom for the duration of the trial.

¶24 This Court has previously concluded that law enforcement officers may be exempt from Rule 615, M.R.Evid., under subsection (2) of the rule. *State v. Claric* (1995), 271 Mont. 141, 147, 894 P.2d 946, 950. However, we have also previously advised courts that in situations where the trial judge grants a motion to exclude witnesses, in the spirit of fairness, all witnesses who are to testify are to be excluded from the courtroom. *State v.*

*Radi* (1975), 168 Mont. 320, 327, 542 P.2d 1206, 1210; *Claric*, 271 Mont. at 147, 894 P.2d at 950. In this case, Lieutenant Neuman testified as a witness for the State. Therefore, although Lieutenant Neuman was the State's designated representative, he was not exempt from Rule 615, M.R.Evid., because he testified as a witness for the State. Accordingly, the District Court erred when it allowed Lieutenant Neuman to remain in the courtroom after it excluded the other witnesses under Rule 615, M.R.Evid.

¶25    In *State v. Van Kirk*, 2001 MT 184, ¶ 37, 306 Mont. 215, ¶ 37, 32 P.3d 735, ¶ 37, we set forth a test for determining whether an error prejudiced a defendant's right to a fair trial and is therefore reversible. The first part of the test requires us to assess whether the type of error at issue is structural error or trial error. *Van Kirk*, ¶ 37. Structural error is error "that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Van Kirk*, ¶ 38. Structural error is typically of constitutional dimensions, precedes the trial, and undermines the fairness of the entire trial proceeding. *Van Kirk*, ¶ 38.

¶26    In contrast, trial error is error that typically occurs during the presentation of a case to the jury. *Van Kirk*, ¶ 40. Further, trial error is "amenable to qualitative assessment by a reviewing court for prejudicial impact relative to the other evidence introduced at trial." *Van Kirk*, ¶ 40.

¶27    We conclude that the type of error in the instant case is trial error. That is, although the District Court's failure to exclude Lieutenant Neuman occurred prior to trial, it was not an error of constitutional dimensions (the right to have witnesses excluded during trial is conferred in Rule 615, M.R.Evid.), nor was the error of such magnitude that it undermined the fairness of the entire trial proceeding. See generally *State v. Peplow*, 2001 MT 253, ¶ 46,

7

307 Mont. 172, ¶ 46, 36 P.3d 922, ¶ 46. More importantly, the error in this case was "an error in the trial process" which is amenable to being quantitatively weighed against the other evidence introduced at trial. *Van Kirk*, ¶¶ 38, 40. That is, this Court is able to weigh Lieutenant Neuman's testimony against the testimony of the other witnesses (which Lieutenant Neuman was erroneously allowed to overhear). Accordingly, the District Court's failure to exclude Lieutenant Neuman from the courtroom must be classified as trial error.

¶28 Trial error is not presumptively prejudicial and therefore it is not automatically reversible. *Van Kirk*, ¶ 40. Once an error is classified as trial error, the second part of the *Van Kirk* test requires us to evaluate whether or not the error was harmless under the circumstances. *Van Kirk*, ¶ 41. To that end, we noted in *Van Kirk* that:

> [O]nce a convicted person raises and establishes that the evidence in question was erroneously admitted **and has alleged prejudice** under the 'reasonable possibility' test[1], it then becomes incumbent on the State to demonstrate that the error at issue was not prejudicial. [Emphasis added].

*Van Kirk*, ¶ 42.

¶29 In this case, however, Kevin neglected to allege that the District Court's failure to exclude Lieutenant Neuman from the courtroom caused him any prejudice. See also *Claric*, 271 Mont. 141, 148, 894 P.2d 946, 950-51. In fact, Kevin devoted less than one page to this issue in his opening brief. As such, we cannot conclude that Kevin suffered prejudice as a result of the District Court's error. Therefore, we hold that the District Court's failure to exclude Lieutenant Neuman from the courtroom amounted to harmless error.

---

[1] An error is prejudicial, and requires reversal, if a reasonable possibility exists that the inadmissible evidence might have contributed to the defendant's conviction. *Van Kirk*, ¶¶ 29, 47.

**ISSUE 2**

¶30    Did the District Court abuse its discretion when it admitted evidence of Kevin's actions at Jerry Croskrey's residence?

¶31    Prior to trial, Kevin filed a motion requesting that the State be prohibited from admitting: (1) evidence that he had taken personal property, other than Pamela's purse and a gold necklace, from Croskrey's residence; and (2) evidence that he had caused damage to Croskrey's residence.  The District Court denied Kevin's motion, and the State admitted the evidence at trial.

¶32    On appeal, Kevin contends that the District Court abused its discretion when it admitted evidence that he had taken additional personal property from Croskrey's residence on August 6, 2001.  Specifically, Kevin maintains that because the State's information only charged him with the theft of the purse and necklace, any evidence that he had taken additional items from Croskrey's home was improperly admitted under Rule 404(b), M.R.Evid., as evidence of other crimes, wrongs or acts.

¶33    Rule 404(b), M.R.Evid., provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶34    However, § 26-1-103, MCA (1999), states that in situations "where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction."  See also *State v. Hansen*, 1999 MT 253, ¶ 77, 296 Mont. 282, ¶ 77, 989 P.2d 338, ¶ 77.  It is well

9

stated that admissibility under the transaction rule is predicated on the jury's right to hear what transgressed immediately prior and subsequent to the commission of the offense charged, so that they may evaluate the evidence in the context in which the criminal act occurred. *State v. Detonancour*, 2001 MT 213, ¶ 29, 306 Mont. 389, ¶ 29, 34 P.3d 487, ¶ 29. Moreover, the acts of a defendant subsequent to the alleged commission of the crime, and intertwined therewith, are highly probative. *Detonancour*, ¶ 29.

¶35     In the instant case, the additional items taken from Croskery's residence consisted of a set of hair clippers, a legal pad, and a day planner. These additional items were reported missing from Croskrey's home on August 6, 2001, and were included in the investigative report prepared by Lieutenant Neuman. Pamela's purse and a gold necklace were also listed as missing in Lieutenant Neuman's investigative report. Therefore, while Kevin was not charged with the theft of the additional items, the theft of the additional items was clearly part of the same transaction as the theft of the purse and the necklace. See § 26-1-103, MCA (1999). Further, there is no evidence that Kevin was prejudiced by the District Court's admission of evidence regarding the additional items. Contrast with *State v. Howell* (1987), 226 Mont. 148, 151-52, 734 P.2d 214, 216-17. Accordingly, we conclude that the District Court did not abuse its discretion when it admitted evidence that Kevin had taken additional items from Croskrey's residence on August 6, 2001.

¶36     Kevin also alleges that the District Court abused its discretion when it admitted evidence that he caused damage to Croskrey's residence on August 6, 2001. However, as we stated above, in situations where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act,

or omission is evidence as part of the transaction. Section 26-1-103, MCA (1999). Here, Kevin was charged with both burglary and theft as a result of his actions at Croskrey's residence on August 6, 2001. Consequently, any damage he caused to Croskrey's residence in the course of committing such offenses was clearly part of the same transaction. Therefore, the District Court did not abuse its discretion when it admitted evidence that Kevin caused damage to Croskrey's residence on August 6, 2001.

## ISSUE 3

¶37 Did the District Court abuse its discretion when it admitted evidence of the handwritten phrase on the cardboard box top?

¶38 Kevin asserts that evidence that he had written the phrase "Your [sic] just a hore [sic] and you have betrayed everyone around you and now you will die" on a cardboard box top was improperly admitted under Rule 404(b), M.R.Evid., as evidence of other crimes, wrongs or acts. However, as we have already noted twice above, § 26-1-103, MCA (1999), states that in situations "where the declaration, act, or omission forms part of a transaction which is itself the fact in dispute or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction." Additionally, we noted above that the acts of a defendant subsequent to the alleged commission of the crime, and intertwined therewith, are highly probative. *Detonancour*, ¶ 29.

¶39 In this case, Lieutenant Neuman located Kevin in the driveway of the Whispering Pines home shortly after receiving information that Kevin had broken into Croskrey's residence. Kevin testified at trial that before Lieutenant Neuman arrived he had entered the Whispering Pines home, and among other things, written the disputed phrase on a cardboard

11

box top. The box top was later discovered in Kevin's truck after Kevin was taken into custody.

¶40 The above chronology of events indicates that Kevin wrote the phrase on the box top only moments after he had broken into Croskrey's residence. Thus, we conclude that pursuant to § 26-1-103, MCA (1999), the phrase was part of the same transaction as Kevin's illegal entry into Croskrey's home. We further note that Kevin failed to allege that the District Court's admission of the phrase caused him any prejudice. As such, we hold that the District Court properly exercised its discretion when it admitted evidence of the phrase at trial.

## ISSUE 4

¶41 Did the District Court abuse its discretion when it admitted evidence that Pamela had a restraining order against Kevin prior to August 6, 2001?

¶42 During trial, the State questioned Kevin about his behavior at the Whispering Pines home on August 6, 2001. The relevant portion of that testimony is as follows:

Q. Why did you go into the [Whispering Pines] home?

A. Why not? It's my house.

Q. Okay. Now you've been separated from Pam for about five months?

A. Yes.

Q. And she had asked you not to go into the house[?]

A. No, she did not.

¶43 The State then called Pamela as a rebuttal witness and questioned her about whether Kevin had permission to enter the Whispering Pines home on August 6, 2001. Pamela

12

responded to the State's inquiry by stating that Kevin did not have permission to enter the Whispering Pines home, as she had obtained a restraining order against him in July of 2001.

¶44 On appeal, Kevin maintains that the District Court abused its discretion when it admitted evidence of the restraining order because such evidence was: (1) irrelevant; (2) prejudicial; or (3) an improper impeachment of his testimony. However, Kevin failed to provide proper support for his claims. Rule 23(a)(4), M.R.App.P., requires that an appellant provide an argument that contains "the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on." Additionally, we have repeatedly held that we will not consider unsupported issues or arguments. *Cutler v. Jim Gilman Excavating, Inc.*, 2003 MT 314, ¶ 22, 318 Mont. 255, ¶ 22, 80 P.3d 1203, ¶ 22. It is "not this Court's obligation to locate authorities or formulate arguments for a party in support of positions taken on appeal." *Cutler*, ¶ 22. In the instant case, Kevin failed to bolster his claims with argument and supporting authority which explained *why* evidence of the restraining order was irrelevant, prejudicial or an improper impeachment of his testimony. Accordingly, we decline to reach this issue.

## ISSUE 5

¶45 Should Kevin be granted a new trial because of cumulative error?

¶46 The doctrine of cumulative error refers to a number of errors which, taken together, prejudice a defendant's right to a fair trial. *State v. Ottwell* (1989), 239 Mont. 150, 157, 779 P.2d 500, 504. Under this doctrine, once such accumulated errors are identified as having prejudiced a defendant's right to a fair trial, reversal is required. *State v. Enright*, 2000 MT

13

372, ¶ 34, 303 Mont. 457, ¶ 34, 16 P.3d 366, ¶ 34.  However, the existence of prejudice must be proven by the defendant, as "mere allegations of error without proof of prejudice are inadequate to satisfy the doctrine." *State v. Campbell* (1990), 241 Mont. 323, 329, 787 P.2d 329, 333.

¶47 Kevin contends that because several errors occurred during his trial, he should be granted a new trial under the doctrine of cumulative error.  In particular, Kevin claims that there were five instances where improper witness testimony was admitted at trial.  However, while Kevin described these alleged errors with some detail in his opening brief, he offered no proof that the alleged errors caused him prejudice.  As we noted above, mere allegations of error, without proof of prejudice, are inadequate to satisfy the doctrine of cumulative error. *Campbell*, 241 Mont. at 329, 787 P.2d at 333.  Moreover, when applying the doctrine of cumulative error, this Court has consistently refused to consider allegations of error which are devoid of argument or authority supporting the defendant's contentions. *Enright*, ¶ 34. Thus, we find no grounds to apply the doctrine of cumulative error in the instant case.

**ISSUE 6**

¶48 Did the District Court abuse its discretion when it denied Kevin's motion for a directed verdict?

¶49 On August 6, 2001, Pamela received a telephone call from her son Zachery.  While speaking to Zachery, Pamela heard Kevin yelling in the background.  Specifically, Pamela testified that Kevin stated: "Zachery, is that your Mom?  Is that your Mom?  Tell her I'm coming to get her and I'm going to kill her.  I'm going to kill her."

¶50 As a result of Kevin's statements to Pamela, the State charged Kevin with violating

14

privacy in communications. The offense of violating privacy in communications is described in § 45-8-213(1), MCA (1999), which provides, in pertinent part:

> [A] person commits the offense of violating privacy in communications if the person knowingly or purposely:
>
> > (a) with the purpose to terrify, intimidate, threaten, harass, annoy, or offend, communicates with a person by telephone and uses obscene, lewd, or profane language, suggests a lewd or lascivious act, or threatens to inflict injury or physical harm to the person or property of the person. The use of obscene, lewd, or profane language or the making of a threat or lewd or lascivious suggestions is prima facie evidence of an intent to terrify, intimidate, threaten, harass, annoy, or offend.

After the State presented its case at trial, Kevin moved for a directed verdict with regard to the offense of violating privacy in communications. The District Court denied Kevin's motion and allowed the issue to go to the jury. The jury found Kevin guilty of the offense[2].

¶51 On appeal, Kevin asserts that the District Court abused its discretion when it denied his motion for a directed verdict because insufficient evidence existed to prove that he had committed the offense of violating privacy in communications. Specifically, Kevin claims that because he did not have a telephone conversation with Pamela on August 6, 2001, he could not have used the telephone to threaten her.

¶52 While Kevin correctly contends that he did not have a direct telephone conversation with Pamela on August 6, 2001, we hold that sufficient evidence existed for the jury to have found Kevin guilty of the offense in question. That is, a person commits the offense of violating privacy in communications if that person "with the purpose to terrify, intimidate,

---

[2] Kevin was also charged with, and convicted of, violating privacy in communications as a result of his telephone conversation with Jerry Croskrey. However, Kevin does not challenge this conviction on appeal.

threaten, harass, annoy, or offend, **communicates with a person by telephone** and . . .

threatens to inflict injury or physical harm to the person or property of the person." Section

45-8-213(1)(a), MCA (1999) (emphasis added). In this case, Kevin testified that he was

present when Zachery called Pamela on August 6, 2001. Kevin further testified as follows:

Q. You knew Zach was calling Pam?

A. Yes.

Q. And you were in the same room listening on the phone?

A. Yes.

. . . .

Q. And you were ranting and raving, and yelling in the background?

A. Yes.

Q. But you don't remember threatening to kill Pam?

A. No.

Q. But you might have?

A. It's possible.

Q. And you weren't talking to Pam?

A. No, I was not.

Q. You were talking loud enough that Pam could have heard you?

A. I was ranting and raving, yes.

¶53 Therefore, although Kevin maintains that he was not speaking directly to Pamela on

August 6, 2001, the evidence indicates that he communicated a message to Pamela over the

telephone. The evidence further indicates that the content of such message was threatening

16

in nature.  Accordingly, sufficient evidence existed for the jury to have found Kevin guilty

of the offense of violating privacy in communications.

¶54    For the foregoing reasons, the judgment of the District Court is affirmed.


                                                      /S/ JIM REGNIER


We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE