No. 03-805

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 232

CITY OF BILLINGS,

Plaintiff and Respondent,

v.

ROCKY T. PETERSON,

Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 03-438
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Jack E. Sands, Attorney at Law, Billings, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Robert Stutz,
Assistant Attorney General, Helena, Montana

Brent Brooks, City Attorney; Moira Murphy D'Alton, Deputy,
Billings, Montana

Submitted on Briefs:  April 7, 2004

Decided:  August 24, 2004

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    A Billings Municipal Court jury convicted Rocky T. Peterson of the misdemeanor offenses of careless driving and driving under the influence of alcohol.  After a number of interim procedural steps, the Thirteenth Judicial District Court, Yellowstone County, affirmed an earlier order upholding the Municipal Court's denial of certain pretrial motions.  Peterson appeals and we affirm.

¶2    We restate the issues as follows:

¶3    1.  Did the District Court err in affirming the Municipal Court's determination that an officer had particularized suspicion to stop Peterson when no recording of the hearing on Peterson's motion was available for review?

¶4    2.  Did the District Court err in affirming the Municipal Court's denial of Peterson's motion to dismiss for unnecessary delay in his initial appearance?

¶5    3.  Did the District Court err in affirming the Municipal Court's denial of Peterson's motion to dismiss for violation of his constitutional right to a speedy trial?

¶6    4.  Did the District Court err in affirming the Municipal Court's denial of Peterson's discovery request to review an officer's personnel records?

## BACKGROUND

¶7    On August 30, 2001, Billings Police Officer Shawn Finnegan issued Peterson a notice to appear October 2, 2001, in the Billings Municipal Court on charges of careless driving and driving under the influence of alcohol (DUI).  Peterson appeared and pled not guilty.

¶8 Peterson moved to dismiss, alleging Finnegan lacked particularized suspicion to stop his vehicle. He also moved to suppress his breath test results, alleging improper administration of his breath alcohol tests. After a hearing, the Municipal Court orally denied the motion.

¶9 Peterson also moved for an order requiring the City to respond to discovery requests, one of which asked for "[t]he personnel records of the officers involved in defendant's arrest and in the operation of any tests given him." After a hearing, the Municipal Court denied the request for personnel records and granted Peterson's other discovery requests.

¶10 The Municipal Court originally scheduled trial for December 5, 2001. The City moved for continuances on November 27, December 11 and February 22. Peterson did not object to the first continuance, which was due to the prosecutor's illness. The Municipal Court granted the second and third motions, which were based on Finnegan's unavailability, over Peterson's objections. Peterson then moved to dismiss, asserting unnecessary delay in his initial appearance and violation of his constitutional right to a speedy trial. The Municipal Court denied the motion. On April 1, 2002, a jury convicted Peterson of both charged offenses.

¶11 Peterson appealed to the District Court, requesting preparation of a trial transcript and all recorded pretrial hearings. The Municipal Court transmitted the record, including a form identifying the tape of the pretrial hearing on Peterson's particularized suspicion motion as #945. The tape was not transmitted, as Peterson's briefs to the District Court acknowledged.

3

¶12    The District Court affirmed in part, determining the Municipal Court correctly denied Peterson's pretrial motions, but reversed on other issues and remanded for retrial. On remand, Peterson pled guilty, reserving the right to appeal those portions of the District Court's earlier order affirming the Municipal Court. The District Court granted Peterson's request to reaffirm its earlier order for purposes of appeal to this Court. Peterson appeals.

## STANDARDS OF REVIEW

¶13    The existence of particularized suspicion to justify an investigatory stop is a question of fact determined under the totality of the circumstances. *State v. Eixenberger*, 2004 MT 127, ¶ 16, 321 Mont. 298, ¶ 16, 90 P.3d 453, ¶ 16 (citation omitted). A court's finding of particularized suspicion is reviewed under the clearly erroneous test. *See State v. Nelson*, 2004 MT 13, ¶ 5, 319 Mont. 250, ¶ 5, 84 P.3d 25, ¶ 5 (citation omitted). Whether an initial appearance violated § 46-7-101(1), MCA, is a question of statutory construction, which we review for correctness. *See City of Missoula v. Lesko*, 2003 MT 177, ¶ 7, 316 Mont. 401, ¶ 7, 73 P.3d 166, ¶ 7 (citation omitted). Whether a defendant's right to a speedy trial was violated is a question of constitutional law, which we also review for correctness. *See State v. Ray*, 2003 MT 171, ¶ 12, 316 Mont. 354, ¶ 12, 71 P.3d 1247, ¶ 12 (citations omitted). Orders granting or denying discovery are reviewed for abuse of discretion. *State v. DuBray*, 2003 MT 255, ¶ 103, 317 Mont. 377, ¶ 103, 77 P.3d 247, ¶ 103 (citation omitted).

## DISCUSSION

¶14    **1. Did the District Court err in affirming the Municipal Court's determination that Finnegan had particularized suspicion to stop Peterson when no recording of the hearing on Peterson's motion was available for review?**

4

¶15     In reviewing the Municipal Court's finding of particularized suspicion, the District Court noted the recording of the pretrial hearing was unavailable and stated it "reviewed the record before it . . . ." The District Court relied on Finnegan's experience in DUI investigations, his observations of Peterson crossing a dividing line and making an improper turn, his identification of Peterson and Peterson's comment that he was possibly swerving.

¶16     Peterson contends the District Court could not affirm the Municipal Court in the absence of the pretrial hearing tape. He first relies on *FIRS Holding Co., Inc. v. Lemley* (1995), 272 Mont. 490, 901 P.2d 571. There, a judge amended a retired judge's findings of fact after a bench trial without reviewing a transcript. On appeal, we held the amending judge committed reversible error. *FIRS Holding*, 272 Mont. at 492, 901 P.2d at 573. In *FIRS Holding*, the amending judge essentially made new findings of fact. Here, the District Court merely reviewed the Municipal Court's oral decision. *FIRS Holding* is of no assistance to Peterson.

¶17     Peterson next argues the District Court had "nothing to review." In its order, the District Court listed several facts that did not appear in the documents of record. The record reflects the District Court did not have the tape of the particularized suspicion hearing, but did have one or more recordings of Peterson's proceedings. On these facts, we accept the District Court's repeated statements that it reviewed the record before it and that the record reflected the evidence on which the District Court relied. The propriety of doing so is further

buttressed in this case by Peterson's total failure to argue, or even hint, that the pretrial hearing tape would have shown error in any part of the District Court's order on review.

¶18     Peterson next asserts the District Court violated "statutory mandates" by affirming based on an incomplete record. He points to §§ 3-6-101(1), -110(1), and -302, MCA, which provide that a municipal court must "be a court of record," an appeal to a district court is "confined to review of the record and questions of law," and a municipal court clerk is responsible for keeping records. Nothing in the statutes precludes a district court from affirming on an incomplete record, provided the record is sufficient for review. The District Court having determined it had a sufficient record, we conclude Peterson has not established a violation of the statutory mandates on which he relies.

¶19     Peterson next argues he cannot be held responsible for the municipal court clerk's failure to transmit a complete record. An appellant bears the burden of establishing error on appeal, however, and a trial court's decision is presumed correct. *See State v. Aakre*, 2002 MT 101, ¶ 43, 309 Mont. 403, ¶ 43, 46 P.3d 648, ¶ 43 (citation omitted). Peterson does not assert, let alone establish, error in the Municipal Court's finding of particularized suspicion. Nor, as just discussed, does he contend that a complete record would have established error by the District Court in reviewing that finding. Therefore, we conclude Peterson has not met his burden on appeal.

¶20     In this regard, however, the Court is increasingly alarmed about the number of cases currently on appeal to this Court which involve incomplete, unavailable and disorderly municipal court records. It is apparent that some municipal courts do not properly docket

6

case documents or preserve recordings. When clerks of municipal courts fail to meet their statutory obligation to maintain and provide an appropriate record on appeal, the consequences to the parties, district courts, this Court and other litigants can be significant. In the present case, the District Court had a sufficient record for review purposes, but the amount of time and resources squandered by counsel and courts as a result of the clerk's failure to provide the entire record on appeal can never be recovered. Moreover, it is not unlikely that crucial evidence will be lost in some future case if municipal court clerks do not satisfy their statutory obligations. The people of Montana would not be amused to learn that misdemeanor criminal convictions may be in jeopardy because of sloppy record-keeping by their municipal employees.

¶21 Finally, we note the City's reference to Rule 9(e), U.M.C.R.App., which allows an appellant to prepare a statement of the evidence or proceedings "within 3 days from the hearing or trial or such time extended as the municipal court may for good cause shown permit" if a record is unavailable, as well as its argument that Peterson failed to follow this procedure. In this regard, we observe that Rule 9(f), U.M.C.R.App., allows parties to submit an agreed statement of the record in lieu of the record on appeal. Peterson correctly responds that the City's legal theory regarding Rule 9(e), U.M.C.R.App., is presented for the first time on appeal. Consequently, and in accordance with our longstanding rule that we do not address theories or issues raised for the first time on appeal, we do not address the City's argument. *See, e.g.*, *State v. May*, 2004 MT 45, ¶ 15, 320 Mont. 116, ¶ 15, 86 P.3d 42, ¶ 15 (citation omitted).

¶22 We hold the District Court did not err in affirming the Municipal Court's finding of particularized suspicion.

¶23 **2. Did the District Court err in affirming the Municipal Court's denial of Peterson's motion to dismiss for unnecessary delay in his initial appearance?**

¶24 The Municipal Court denied Peterson's motion to dismiss for unnecessary delay in his initial appearance. The District Court affirmed on appeal, agreeing that a 33-day delay would not be normal procedure for an incarcerated defendant but was acceptable for a defendant who received a notice to appear.

¶25 Peterson asserts the delay violated § 46-7-101(1), MCA, which reads "[a] person arrested, whether with or without a warrant, must be taken without unnecessary delay before the nearest and most accessible judge for an initial appearance." He contends the statute applies to all arrested persons, whether incarcerated or not.

¶26 The City responds that Peterson was not arrested and, therefore, the statute does not apply. The District Court's order states Peterson was arrested. The City did not cross-appeal the issue of whether Peterson was arrested vis-a-vis § 46-7-101(1), MCA. Therefore, that issue is not properly before us. *See State v. Gardner*, 2003 MT 338, ¶ 24, 318 Mont. 436, ¶ 24, 80 P.3d 1262, ¶ 24. Consequently, for purposes of this case, Peterson was arrested.

¶27 Returning to Peterson's argument, he first relies on *County of Riverside v. McLaughlin* (1991), 500 U.S. 44, 56, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49, 63, in which the United States Supreme Court stated "a jurisdiction that provides judicial determinations

8

of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement" of a prior case. *McLaughlin* has no application here. That case involved Fourth Amendment considerations relating to "prompt" probable cause determinations for persons arrested and detained. *McLaughlin*, 500 U.S. at 55-56, 111 S.Ct. at 1669-70, 114 L.Ed.2d at 62. The present case involves neither a probable cause determination nor a detained person.

¶28 Next, Peterson acknowledges our statement in *State v. Dieziger* (1982), 200 Mont. 267, 270, 650 P.2d 800, 802 (citation omitted), that the purposes of § 46-7-101, MCA, are to enable a defendant to assist in preparing the defense and to protect a defendant from being held incommunicado for a protracted time. He also correctly observes that the Montana Legislature amended § 46-7-101, MCA, after *Dieziger*. *See* 1991 Mont. Laws, Ch. 800, Sec. 87. Peterson argues *Dieziger* is irrelevant to the present case because of the amendment, the lack of arrest and timing of the charge in *Dieziger*, and the failure of the defendant in *Dieziger* to file a suppression motion or put on a defense. We disagree.

¶29 Section 46-7-101, MCA, as addressed in *Dieziger*, provided in pertinent part that

> [a]ny person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest or most accessible judge in the same county, and a complaint stating the charges against the arrested person shall be filed forthwith.

*Dieziger*, 200 Mont. at 269-70, 650 P.2d at 802. The statutory language "without unnecessary delay," upon which *Dieziger*'s determination of the statute's purposes was based, remains unchanged in § 46-7-101, MCA, as amended. Nothing in the 1991

9

amendments to § 46-7-101, MCA, impacts on the statute's purposes as stated in *Dieziger*. Moreover, factual distinctions between *Dieziger* and the present case do not relate to the statute's purposes.

¶30    Here, Peterson was not incarcerated and does not assert impairment of his defense due to the 33-day delay in his initial appearance. Under these facts and given the purposes of § 46-7-101(1), MCA, we discern no error in the District Court's agreement with the Municipal Court that the delay in Peterson's initial appearance was acceptable under the statute. Having concluded the 33-day delay of Peterson's initial appearance did not violate the statutory requirement, we need not consider Peterson's arguments regarding the appropriate remedy for a violation of § 46-7-101(1), MCA.

¶31    We hold the District Court did not err in affirming the Municipal Court's denial of Peterson's motion to dismiss for unnecessary delay in his initial appearance.

¶32    **3. Did the District Court err in affirming the Municipal Court's denial of Peterson's motion to dismiss for violation of his constitutional right to a speedy trial?**

¶33    On August 30, 2001, Peterson received a notice to appear and Finnegan filed a complaint against him. Peterson's trial occurred April 1, 2002. He argues his constitutional right to a speedy trial was violated.

¶34    The constitutional right to a speedy trial attaches at arrest or the filing of a complaint. *Ray*, ¶ 23 (citations omitted). Four factors pertain to constitutional speedy trial analysis: (1) the length of the delay; (2) the reason for it; (3) the defendant's assertion of the right; and (4) the prejudice to the defense. *Ray*, ¶ 13 (citation omitted). In the present case, the parties

10

agree that the length of the delay mandates constitutional speedy trial analysis and that Peterson timely asserted his right to a speedy trial. It also is undisputed that Peterson carries the burden of establishing prejudice under the fourth factor. *See Ray*, ¶¶ 14, 16, 24 (citations omitted).

¶35 Peterson's constitutional speedy trial argument focuses on prejudice to the defense. We analyze whether prejudice exists based on the three interests speedy trials are intended to protect: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern; and (3) avoidance of impairment of the defense. *State v. Longhorn*, 2002 MT 135, ¶ 33, 310 Mont. 172, ¶ 33, 49 P.3d 48, ¶ 33 (citation omitted). The weightiest interest is avoiding impairment of the defense. *Longhorn*, ¶ 39 (citation omitted). Here, Peterson was not incarcerated and does not contend his defense was impaired. He asserts, however, that he "experienced considerable anxiety" in missing work to attend proceedings that were rescheduled several times.

¶36 Because anxiety and concern are inherent in being charged with an offense, the proper analysis is the degree to which a delay of trial aggravated them. *Longhorn*, ¶ 38 (citation omitted). Based on his assertion that he "experienced considerable anxiety," Peterson contends that "virtually no defendant, knowing that he would have to take that much time off work and be prepared for so many fruitless hearings and trial dates, would ever be likely to contest a misdemeanor charge." He advances no authority under which these asserted facts would constitute sufficient prejudice to warrant reversal, however. Rule 23(a)(4), M.R.App.P., requires an appellant to support arguments with citations to the record and to

11

relevant authorities; an appellant cannot meet the burden of establishing error absent such citations. *See State v. Bailey*, 2004 MT 87, ¶ 26, 320 Mont. 501, ¶ 26, 87 P.3d 1032, ¶ 26 (citation omitted). We conclude Peterson's missed work, repeated court appearances, and related anxiety--standing alone--are insufficient to constitute the prejudice necessary to establish a violation of his constitutional right to a speedy trial.

¶37 We hold the District Court did not err in affirming the Municipal Court's denial of Peterson's motion to dismiss for violation of his constitutional right to a speedy trial.

¶38 **4. Did the District Court err in affirming the Municipal Court's denial of Peterson's request to review Finnegan's personnel records?**

¶39 Peterson moved for discovery of 16 items, including the personnel files of officers involved in his case--namely, Finnegan's file. In support of his motion, Peterson relied on § 46-15-322(1), MCA, United States Supreme Court cases cited for due process principles, *United States v. Henthorn* (9th Cir. 1991), 931 F.2d 29, and right to know statutes. The Municipal Court granted all of Peterson's discovery requests except the request for Finnegan's personnel file, reasoning the request was not sufficiently supported to warrant an *in camera* investigation of the file for exculpatory evidence. The District Court affirmed, and Peterson asserts error.

¶40 Pursuant to § 46-15-322(1), MCA, a prosecutor must make certain material and information available to a defendant upon request. Peterson does not identify what language in § 46-15-322(1), MCA, supports his request for Finnegan's file.

12

¶41 In *State v. Romero* (1996), 279 Mont. 58, 74, 926 P.2d 717, 727, this Court applied § 46-15-322(5), MCA, to a defendant's request for an officer's personnel file. Section 46-15-322(5), MCA, provides in pertinent part that

> [u]pon motion showing that the defendant has substantial need in the preparation of the case for additional material or information not otherwise provided for . . . the court, in its discretion, may order any person to make it available to the defendant.

In *Romero*, a defendant requested an officer's personnel file, and the State denied his request. The defendant did not seek to compel production, but filed a motion *in limine* to preclude the officer from testifying. *Romero*, 279 Mont. at 73, 926 P.2d at 726. The district court denied the motion, advising that § 46-15-322(5), MCA, required the defendant to secure a court order compelling discovery of the personnel file. We affirmed, agreeing that the defendant had failed to file a discovery motion. *Romero*, 279 Mont. at 74, 926 P.2d at 727.

¶42 Here, the District Court relied on *Romero* and applied § 46-15-322(5), MCA, to Peterson's request for Finnegan's file. The District Court concluded Peterson had not demonstrated "substantial need" for the file because the basis for his request was "cross-examination purposes."

¶43 On appeal, Peterson does not contest the applicability of § 46-15-322(5), MCA, to his request for Finnegan's file. Indeed, he correctly asserts he satisfied *Romero*'s requirement that a defendant must file a motion for discovery of a personnel file. He contends, however, that he could not specify how he would use the information in Finnegan's file until he

obtained it. This argument ignores the plain language of § 46-15-322(5), MCA, which requires a motion demonstrating substantial need.

¶44 Peterson further argues he should have had an opportunity to inquire about whether Finnegan's file contained any blemishes, because the Municipal and District Courts relied on Finnegan's training, experience and awards in their determinations that Finnegan was an experienced officer who developed particularized suspicion based on his observations. Peterson did not offer and could not have offered this justification in his original motion, as required by § 46-15-322(5), MCA, because he filed his discovery motion more than two months before the hearing in the Municipal Court on the particularized suspicion issue. We conclude Peterson did not establish "substantial need" for Finnegan's personnel file, as required by § 46-15-322(5), MCA.

¶45 Alternatively, Peterson asserts a defendant's constitutional right to due process is violated when the prosecution fails to produce relevant documents that could be used to cross-examine key government witnesses. He cites *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, and *Kyles v. Whitley* (1995), 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490, in support of this assertion, but neither discusses nor applies those cases to the present case. It is not this Court's obligation to develop parties' arguments for them. *State v. Flowers*, 2004 MT 37, ¶ 44, 320 Mont. 49, ¶ 44, 86 P.3d 3, ¶ 44 (citation omitted). Thus, we address *Davis* and *Kyles* only briefly.

¶46 In *Davis*, the United States Supreme Court held a defendant's right to cross-examination under the Confrontation Clause was violated when a trial court issued a

14

protective order precluding defense counsel from using a juvenile's record to impeach him regarding his potential bias or motive in identifying the defendant as the perpetrator of a crime. *Davis*, 415 U.S. at 317-18, 94 S.Ct. at 1111, 39 L.Ed.2d at 354-55. The Supreme Court further determined the constitutional error required automatic reversal. *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355. Thus, *Davis* did not address a due process violation stemming from a prosecution's failure to provide information. Nor does Peterson assert a violation of the Confrontation Clause. Therefore, his reliance on *Davis* is misplaced.

¶47 *Kyles* addressed a habeas corpus petitioner's argument that the prosecution violated his right to due process by failing to provide information to the defense before his capital murder trial. The undisclosed information included, among other things, six inconsistent eyewitness descriptions of the murderer; license numbers taken from vehicles at the crime scene; an informant's inconsistent statements; and evidence linking the informant to other crimes at the same location and to a similar, unrelated murder. *Kyles*, 514 U.S. at 428-29, 115 S.Ct. at 1563, 131 L.Ed.2d at 502. Applying a line of cases stemming from *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, the Supreme Court held a due process violation occurred because the cumulative effect of the undisclosed evidence amounted to a reasonable probability that the result of the defendant's trial would have been different if the evidence had been disclosed. *Kyles*, 514 U.S. at 432-54, 115 S.Ct. at 1565-75, 131 L.Ed.2d at 505-18.

¶48 Peterson does not assert a *Brady* violation occurred in this case. Again, this Court is not obligated to formulate arguments on a party's behalf. *Flowers*, ¶ 44. Peterson's passing

15

reference to *Kyles* is insufficient to raise a *Brady* claim or a constitutional challenge to § 46-15-322(5), MCA. Therefore, we decline to address *Kyles* further.

¶49 Peterson next advances *Henthorn* as authority specifically addressing discovery of law enforcement officers' personnel files. As with *Davis* and *Kyles*, he does not set forth any argument regarding the application of *Henthorn* to the present case, but merely quotes from it. In *Henthorn*, the United States Court of Appeals for the Ninth Circuit ruled that the government must inspect a testifying officer's personnel file upon a defendant's request for the file's production, must turn over any material information from the file to the defense, and must submit information to the trial court for an *in camera* review if the materiality of the information is uncertain. *Henthorn*, 931 F.2d at 30-31. Under *Henthorn*, the defendant is not required to "make an initial showing of materiality" in order to trigger the government's obligation to inspect the file. *Henthorn*, 931 F.2d at 31.

¶50 As noted above, Peterson does not set forth any argument regarding *Henthorn*'s application and, specifically, the relationship of *Henthorn* and § 46-15-322(5), MCA. Moreover, Peterson does not attempt in his reply brief to refute the City's contention that *Henthorn* is inapposite because it did not concern § 46-15-322(5), MCA, *Romero* superceded it, and analysis under Montana law may differ due to the Montana Constitution's right to privacy. We decline to formulate arguments on Peterson's behalf. *See Flowers*, ¶ 44. In light of Peterson's failure to present an argument, we decline to address *Henthorn* further.

¶51 Finally, Peterson relies on *Great Falls Tribune v. Sheriff* (1989), 238 Mont. 103, 775 P.2d 1267, in asserting his entitlement to Finnegan's personnel file under the constitutional

16

right to know. In the Municipal Court, however, he based his discovery request on §§ 2-6-102 and -104, MCA, rather than the right to know set forth in Article II, Section 9, of the Montana Constitution and discussed in *Great Falls Tribune*. Section 2-6-102, MCA, entitles citizens to inspect and copy public writings, with exceptions for constitutionally protected materials and certain statutorily protected materials. Section 2-6-104, MCA, provides that public records and other matters in the office of any public officer are open to public inspection during office hours, except as provided by law. In this regard, Peterson presents no argument regarding the application of §§ 2-6-102 and -104, MCA. Peterson's assertion of a violation of the constitutional right to know constitutes a change of legal theory from his earlier reliance on right to know statutes. As stated above, we do not address changes in legal theory on appeal. *May*, ¶ 15. Therefore, we decline to address Peterson's *Great Falls Tribune* argument.

¶52  We hold the District Court did not err in affirming the Municipal Court's denial of Peterson's discovery request to review Finnegan's file.

¶53  Affirmed.

/S/ KARLA M. GRAY


We concur:

/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE

17